KUNDE v TEESDALE LUMBER COMPANY (AMENDED OPINION)

1. WORKMEN'S COMPENSATION—APPEAL BOARD—FINDINGS OF FACT.

   Absent fraud, the Court of Appeals may not disturb findings of
   fact made by the Workmen's Compensation Appeal Board
   (Const 1963, art 6, § 28; MCLA 418.861).

2. WORKMEN'S COMPENSATION—APPEAL BOARD—FINDINGS OF FACT—
   PART-TIME EMPLOYEES—AVERAGE WEEKLY WAGE.

   The Workmen's Compensation Appeal Board could properly find
   that an injured employee was not a part-time employee where
   he was employed on a work-available basis with no agreement
   to limit the hours he was expected to work, and a determina-
   tion of the average weekly wage based upon such a finding is
   proper.

3. WORKMEN'S COMPENSATION—LOSS OF VISION—LENS—SCARRING—
   SURGICAL REMOVAL.

   Surgical removal of the natural lens of an injured eye is not a
   prerequisite to a finding of loss of vision of the eye where there
   is permanent corneal scarring closely equivalent in effect to the
   removal of the lens (MCLA 418.361).

4. WORKMEN'S COMPENSATION—LOSS OF VISION—MEASUREMENT—
   STATUTES.

   A finding of the specific loss of an eye is based upon the measure-
   ment of the vision loss under natural conditions, rather than
   after correction; the statutory requirement of 80% loss of vision
   for a finding of specific loss is satisfied where a plaintiff lost
   85% of the vision of an eye even though the loss was correcta-
   ble to 35% through use of a contact lens (MCLA 418.361).

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 58 Am Jur, Workmen's Compensation § 530.
[3, 4] 58 Am Jur, Workmen's Compensation § 290.
[5] 4 Am Jur 2d, Appeal and Error § 309.
[6] 58 Am Jur, Workmen's Compensation § 296.
[7] 16 Am Jur 2d, Constitutional Law §§ 506, 514, 518.
[8] 58 Am Jur, Workmen's Compensation § 334 *et seq.*

5. APPEAL AND ERROR—LEAVE TO APPEAL—APPLICATION—ISSUES CON-
    SIDERED.

    Consideration by the Court of Appeals of an issue not raised in
    an application for leave to appeal is normally precluded, but a
    constitutional question of first impression not so raised may be
    decided in the discretion of the Court to settle the issue for
    future cases.

6. WORKMEN'S COMPENSATION—STATUTES—SECOND INJURY FUND—
    DISPARITY OF BENEFITS—CONSTITUTIONAL LAW—EQUAL PROTEC-
    TION.

    A statutory amendment which effected a change in benefits
    payable to injured employees from the Second Injury Fund is
    not violative of the constitutional guarantee of equal protection
    of the laws even though it results in disparate treatment of
    those injured prior to the effective date of the amendment as
    opposed to those injured after that date (1968 PA 227).

7. CONSTITUTIONAL LAW—EQUAL PROTECTION—SOCIAL WELFARE—LEG-
    ISLATIVE CLASSIFICATION.

    There is no violation of constitutional principles of equal protec-
    tion of the law in the area of social welfare legislation as long
    as the legislative classification is reasonably related to the
    purpose of the statute enacted.

8. WORKMEN'S COMPENSATION—RIGHT TO BENEFITS.

    Rights to benefits under the Workmen's Compensation Act are
    purely statutory, and the Legislature has the prerogative to
    redefine the extent of those benefits.

Appeal from Workmen's Compensation Appeal
Board. Submitted Division 3 January 2, 1974, at
Lansing. (Docket Nos. 16178, 16179.) Decided
March 28, 1974. (52 Mich App 360.) Leave to
appeal denied, 391 Mich 841 (1974). Amended
opinion filed September 24, 1974.

Claim by Gerhard Kunde against Teesdale Lum-
ber Company, Employers Mutual Liability Com-
pany, and the Second Injury Fund for workmen's
compensation. Compensation granted. Plaintiff and
defendants Teesdale Lumber Company and Em-
ployers Mutual Liability Company appeal by leave

granted. Reversed and remanded with instructions.

*Reamon, Williams, Klukowski & Craft, P. C.;* for plaintiff.

*Hillman, Baxter & Hammond* (by *Albert J. Russell* and *Robert N. Hammond),* for defendants Teesdale Lumber Company and Employers Mutual Liability Company.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *William J. Szykula* and *A. C. Stoddard,* Assistants Attorney General, for defendant Second Injury Fund.

Before: Lesinski, C. J., and Holbrook and Bashara, JJ.

### Amended Opinion

Holbrook, J. On January 6, 1969, plaintiff was struck in the right eye by an object while he was cutting through rough lumber with a power saw in the defendant Teesdale Lumber Company's sawmill. In 1926 plaintiff had lost practically all the vision of his left eye as a result of an automobile accident. Owing to the work-related injury in January 1969, plaintiff lost approximately 85% of the visual capacity of his right eye. Plaintiff has, however, been fitted with a contact lens in the right eye and with it the loss of vision is only 35%. According to plaintiff's treating physician, the contact lens has been irritating plaintiff's eye, and consequently plaintiff has only been able to wear the lens two hours out of every day. Plaintiff filed a claim for workmen's compensation benefits, and after a hearing the hearing referee found that

plaintiff's average weekly wage was $80 per week, that he had suffered the specific loss of his right eye, that he was not a part-time employee within the meaning of the compensation act, and that since he had already lost the specific use of one of his eyes the subsequent injury to his right eye qualified him for coverage by the Second Injury Fund under MCLA 418.521(2); MSA 17.237(521)(2).[1] Defendant Employers Mutual Liability Company appealed the finding of the average weekly wage and the finding that plaintiff was not a part-time employee, and urged the affirmance of the finding that plaintiff suffered the specific loss of his right eye. Defendant Second Injury Fund appealed the finding that plaintiff was not a part-time employee, the finding of his average weekly wage, and the finding that plaintiff had lost the use of his right eye. The Workmen's Compensation Appeal Board (hereafter WCAB) affirmed the referee's finding with regard to the average weekly wage and plaintiff's status as a non-part-time employee. However, the WCAB reversed the referee's finding that plaintiff had lost the use of his right eye within the meaning of the compensation act. Plaintiff then filed an application for leave to appeal with this Court. The defendant insurer also sought leave to appeal raising the issue of whether plaintiff should properly be viewed as a part-time employee and also raising the issue of the specific loss of plaintiff's use of his right eye. We granted leave to appeal and now proceed to decide the issues raised.

## I

Did the WCAB correctly construe MCLA

---

[1] Formerly MCLA 417.53; MSA 17.230(103).

418.371; MSA 17.237(371)[2] pertaining to part-time employment in its determination of plaintiff's average weekly wage?

The portions of MCLA 418.371; MSA 17.237(371) pertinent to this appeal read as follows:

"(2) Average weekly wage means the weekly wage earned by the employee at the time of his injury, inclusive of overtime, premium pay, and cost of living adjustment, and exclusive of any fringe or other benefits which continue during disability, but in no case less than 40 times his hourly rate of wage or earning. When it is found that the established normal work week for the employee's classification of employment in the establishment of the employer where the employee suffered a personal injury is less than 40 hours, then the average weekly wage shall be established by multiplying the employee's hourly rate or earning by the number of hours customarily worked in the employee's classification or employment in that place of employment or his actual earned wages, whichever is greater.

"(3) When a hearing referee finds that the employee was employed specifically and not temporarily on a part-time basis, the average weekly wage shall be determined by multiplying the hourly rate or earning by the average number of hours worked in the part-time employment. When it is found that the employee has worked an average of 25 hours or more per week in all of his current employments, he shall not be considered a part-time employee."

The hearing referee and the WCAB both agreed that plaintiff was not employed "specifically and not temporarily on a part-time basis" within the meaning of (3) above. Plaintiff was employed on a work-available basis and there was no evidence of an agreement to limit the hours plaintiff was expected to work. Therefore, the WCAB could properly have found that (3) was inapplicable and

_____

[2] Formerly MCLA 412.11; MSA 17.161.

that plaintiff was not a part-time employee. Absent fraud this Court may not disturb findings of fact made by the WCAB. *Carter v Kelsey-Hayes Co,* 386 Mich 610; 194 NW2d 326 (1972); Const 1963, art 6, § 28; MCLA 418.861; MSA 17.237(861).[3]

Having concluded that plaintiff was not a part-time employee, the WCAB applied the first sentence of (2) in MCLA 418.371; MSA 17.237(371) quoted above to determine plaintiff's average weekly wage. The WCAB apparently found the second sentence of (2) inapplicable in the determination of plaintiff's average weekly wage because there was no argument made by the defendants that plaintiff belonged to an "employee's *classification* of employment" which was less than 40 hours. We find no error in the WCAB's factual determination of the average weekly wage of the plaintiff under these circumstances.

## II

Was the WCAB correct in determining that plaintiff had not sustained a specific loss of his right eye as a result of his accident by judging his loss on the basis of his corrected vision rather than natural vision?

The WCAB claims that Michigan case law establishes that the loss of vision in plaintiff's right eye should be determined upon the basis of his vision as corrected through the use of a contact lens. The WCAB asserts that the plaintiff can compute his loss of vision upon the basis of his eyes in their natural state only if the lens in the injured eye has been surgically removed. The board cited *Lindsay v Glennie Industries, Inc,* 379 Mich 573; 153 NW2d 642 (1967), for this rule and then distin-

[3] Formerly MCLA 413.12; MSA 17.186.

guished the facts of this case from *Lindsay*. We disagree with the ruling of the WCAB. In *Lindsay* the Supreme Court rejected *Cline v Studebaker Corp*, 189 Mich 514; 155 NW 519 (1915), wherein the majority held that in an application for the determination of the specific loss of an eye under the Workmen's Compensation Act the proper test was to measure the degree of vision and coordination *after* the application of the prosthesis. The *Lindsay* Court went on to say at 379 Mich 578; 153 NW2d 644:

"We treat this case as one of first impression. We hold the surgical removal of the natural lens made necessary by an injury arising out of and in the course of claimant's employment is loss of an eye within the meaning of the amended statute.

"We recognize that substituting an artificial lens has 'restored' vision to the otherwise sightless eye. We point out that a specific loss award is not made as compensation for diminution of use of the involved organ or member. It is not awarded to compensate for loss of earnings or earning capacity. It is awarded irrespective of either fact or both. If ophthalmological advances and refinements in the use of contact lens has in fact rendered the amended statute inconsonant with its original legislative intent, it is the province of the Legislature to say so. We construe the statute in the plain meaning of its wording."

The WCAB mistakenly construed *Lindsay* to mean that there could be no finding of specific loss of an eye unless surgical removal of the natural lens of the eye had occurred. This construction of *Lindsay* is much too narrow. In *Hutsko v Chrysler Corp,* 381 Mich 99, 102–103; 158 NW2d 874, 876 (1968), the Supreme Court in dicta clearly outlined what proofs were needed to show a specific loss of a body member for compensation purposes:

"However, in order to qualify for the specific loss payment where there has not been the actual physical loss of the member as by amputation, there must be that total incapacitating loss of use which renders the organ or member industrially useless for any type of work, skilled or unskilled. To hold otherwise we think would be a logical contradiction. Plaintiff's injury has not amounted to the actual physical loss tantamount to destruction or amputation contemplated by the specific loss schedule. The test is not the degree of loss measured by the requirements of the skill of the injured workman. The test is the degree of loss as compared with the actual physical loss by destruction or amputation. *We hardly need add that where the specific loss schedule makes an exception as in the case of an eye, the percentage of loss legislatively specified obtains.*" (Emphasis supplied.)

Nothing in MCLA 418.361; MSA 17.237(361),[4] requiring 80% loss of vision for a finding of the specific loss of an eye, says that the vision loss is measured under corrected, rather than natural, conditions. Recently in *Hilton v Oldsmobile Division of General Motors Corp,* 390 Mich 43; 210 NW2d 316 (1973), the Supreme Court reaffirmed its ruling in *Lindsay* quoted above. In *Hilton* Justice Coleman dissented on the grounds that *Lindsay* ignored established precedent and that the focus of the inquiry should be on the injured employee's *loss of vision as corrected.* Under this standard since plaintiff's loss of sight when corrected by a contact lens is only 35% there would be no specific loss of an eye within the terms of MCLA 418.361; MSA 17.237(361), requiring 80% loss of vision. Justice Coleman's view did not prevail, however. The mere fact that both *Hilton* and *Lindsay* dealt with surgical removal of the natural lens of the eye does not require a different result than we reach in this case where there was

---

[4] Formerly MCLA 412.10; MSA 17.160.

permanent corneal scarring to such an extent that 85% of the vision of plaintiff's right eye was lost. The scarring is so closely equivalent in effect to the removal of a lens it would be unreal to distinguish them for compensation purposes. For substantial support of this holding in many cases from other jurisdictions, see 2 Larson's Workmen's Compensation Law, § 58.10, pp 88.50–88.51, and the 1973 cumulative supplement thereto.

## III

Is the July 1, 1968 amendment of MCLA 412.9; MSA 17.159[5] unconstitutional as violative of plaintiff's right to equal protection of the laws?

Plaintiff did not raise this issue on his application for leave to appeal. Normally this would preclude our consideration of the question. *Louagie v Merritt, Chapman & Scott,* 382 Mich 274; 170 NW2d 13 (1969). Since, however, it is a constitutional question apparently of first impression in this state we have exercised our discretion and proceed to analyze the problem with a desire of settling the issue for future cases.

Prior to July 1, 1968, MCLA 412.9; MSA 17.159 read in pertinent part as follows:

"Any permanently and totally disabled person as defined in this act who, on or after June 25, 1955, is entitled to receive payments of workmen's compensation under this act in amounts per week of less than is presently provided in the workmen's compensation schedule of benefits for permanent and total disability and for a lesser number of weeks than the duration of such permanent and total disability shall after the effective date of any amendatory act, by which his disability is defined as permanent and total disability or

---

[5] Now MCLA 418.351, 418.353, 418.355, 418.357, 418.359; MSA 17.237(351), 17.237(353), 17.237(355), 17.237(357), 17.237(359).

by which the weekly benefit for permanent and total disability is increased, receive weekly, without application, from the second injury fund, an amount equal to the difference between what he is now or shall hereafter be entitled to receive from his employer under the provisions of this act as the same was in effect at the time of his injury and the amount now provided for his permanent and total disability by this or any other amendatory act with appropriate application of the provisions of paragraphs (b), (c), (d) and (e) of this section since the date of injury. Payments from this second injury fund shall continue after the period for which any such person is otherwise entitled to compensation under this act for the duration of such permanent and total disability *according to the full rate provided in the schedule of benefits."* (Emphasis supplied.)

The statute was amended by 1968 PA 227, effective July 1, 1968, and by virtue of the amendment was altered and placed in a new section of the Workmen's Compensation Act, to become MCLA 417.53; MSA 17.230(103).[6] For the purposes of this case the material change made by the 1968 amendment was that the phrase "according to the full rate provided in the schedule of benefits" was deleted from the statute.

In *King v Second Injury Fund,* 382 Mich 480; 170 NW2d 1 (1969), the Supreme Court held that the "full rate" contemplated in MCLA 412.9(a); MSA 17.159(a), prior to the 1968 amendment meant that the limitation of weekly benefits to 66-2/3% of the employee's average weekly wage at the time of the injury applied only to the employer and not to the Second Injury Fund, since to retain the 66-2/3% limitation in such cases would defeat the theory underlying the creation of the Second Injury Fund. The alleged effect of the 1968 amend-

[6] *See* footnote 1.

ment is that those employees totally and permanently disabled prior to July 1, 1968, are, in accordance with *King,* paid at the full rate as provided in the schedule of benefits, but those injured after July 1, 1968, are paid only 66-2/3% of their average weekly wages. This is the interpretation given the statute by the Attorney General and the Second Injury Fund. OAG, 1969–1970, No. 4711, p 187 (November 9, 1970). Apparently, it is also the view of the WCAB, which stated in its opinion:

"The above being our finding, we shall not here act upon the referee's awarding of maximum rates payable by the Second Injury Fund for an injury which occurred after 1968 PA 227 which amendment would appear to bar such awards."

The effect on the plaintiff of the above statutory interpretation is that his total benefits to be received from the Second Injury Fund will be limited to 66-2/3% multiplied by his average weekly wages of $80 per week, or $53.33 per week. Had he been injured prior to July 1, 1968, he would have been entitled to the "full rate" from the Second Injury Fund, without regard to the 66-2/3% limitation, as was mandated by *King, supra.* Plaintiff claims such disparate treatment accorded employees injured *after* July 1, 1968, as opposed to that awarded those injured *before* July 1, 1968, violates his constitutional guarantees to equal protection of the laws.

In the area of social welfare legislation as long as the legislative classification is reasonably related to the purpose of the statute enacted, there is no violation of constitutional principles of equal protection of the laws. *Richardson v Belcher,* 404 US 78; 92 S Ct 254; 30 L Ed 2d 231 (1971); *Pusquilian v Cedar Point, Inc,* 41 Mich App 399;

200 NW2d 489 (1972); *Verberg v Simplicity Pattern Co,* 357 Mich 636; 99 NW2d 508 (1959). In *Verberg* the Supreme Court held that differential benefits from the Second Injury Fund payable only to those totally and permanently disabled within the section of the Workmen's Compensation Act defining total and permanent disability to mean only specific losses or injuries, and not to others permanently and totally disabled as a matter of fact, did not establish an unreasonable classification in the constitutional sense. As in *Verberg,* we see nothing so palpably arbitrary and unreasonable as to be constitutionally defective in the legislative classification drawn here which results in different compensation treatment accorded employees injured *before* as opposed to those injured *after* July 1, 1968. There are potentially many rational reasons why the Legislature constructed the classification it did. It may have anticipated the *King, supra,* ruling and its effects, and thus sought to equalize the compensation responsibility owed by employers and the Second Injury Fund. It may have felt that any added burden placed on the Second Injury Fund by requiring it to pay the full rate as set out in the schedule of benefits might damage the fund, and thus destroy its effectiveness. The existence of any state of facts that can be reasonably conceived must be assumed in order to sustain a legislative classification as constitutional. *Verberg, supra; People v Raub,* 9 Mich App 114; 155 NW2d 878 (1967); *Alexander v Detroit,* 45 Mich App 7; 205 NW2d 819 (1973). To suggest, as plaintiff implicitly does here, that those injured after July 1, 1968, must always receive identical compensation benefits as those injured before that date ignores the possibility that compensation needs may change over time. Rights to benefits under the Workmen's Compensation Act

are purely statutory. Thus, the Legislature has the prerogative to redefine the extent of those benefits. We do not view *Gallegos v Glaser Crandell Co,* 388 Mich 654; 202 NW2d 786 (1972), cited by plaintiff on appeal, as sufficiently analogous either in its facts or law to require a result different than the one we reach. We find nothing constitutionally deficient in the legislative classification in issue here.

The ruling in this case is without prejudice to plaintiff's rights under MCLA 418.355; MSA 17.237(355).

Reversed with instructions to reinstate the hearing referee's finding that the plaintiff has suffered the specific loss of his right eye and to make an appropriate compensation award consistent with this opinion. Costs to plaintiff.

All concurred.