WEMMER v NATIONAL BROACH & MACHINE COMPANY
(AFTER REMAND)

Docket Nos. 77-301, 77-584. Submitted January 9, 1978, at Detroit.— Decided April 2, 1979. Leave to appeal denied, 406 Mich 1002.

Arthur R. Wemmer became totally and permanently disabled from a work-related injury occurring on November 4, 1968. Benefits and statutory increases were paid by National Broach & Machine Company and the second injury fund until Wemmer's total benefits reached (actually exceeded) the ceiling imposed by the Worker's Disability Compensation Act, which limits payment to two-thirds of the average weekly wage at time of injury. Wemmer's payments were limited to two-thirds of his average weekly wage at the time of his compensable injury. Meanwhile, on January 12, 1974, Wemmer reached age 65. At this point, the age 65 reduction provisions in the compensation statute called for a 5% reduction in benefits. A dispute arose as to whether differential benefits payable by the second injury fund were subject to these 5% reductions and, if so, which of several methods of calculation should be employed to determine payment. This dispute came before the Workmen's Compensation Appeal Board (WCAB). The board's opinion was issued on December 21, 1976. Wemmer appealed. The second injury fund, in a separate appeal, also appealed to the Court of Appeals. The Court of Appeals affirmed the WCAB opinion in part and remanded in part, *Wemmer v National Broach & Machine Co* (Docket Nos. 77-301, 77-584, August 9, 1978, [unreported]). Wemmer then requested leave to appeal to the Supreme Court. The application for leave to appeal was denied, 405 Mich 835 (1979). On the Court of Appeals remand the WCAB issued its opinion on August 25, 1978, holding that a totally and permanently injured employee is limited to benefits consisting of two-thirds of his average weekly wage at the time

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 5] 82 Am Jur 2d, Workmen's Compensation §§ 344, 368, 378, 486.
[2] 2 Am Jur 2d, Administrative Law § 241.
[4, 6] 82 Am Jur 2d, Workmen's Compensation § 344.
[7] 82 Am Jur 2d, Workmen's Compensation § 340.

of his injury and that this is the absolute ceiling on both the
employer and second injury fund, except where minimum rates
set by the compensation bureau exceed two-thirds of the aver-
age weekly wage, at which time the minimum becomes the
floor beneath which total payments may not fall, and that an
injured employee should receive incremental increases from the
second injury fund between the age of 65 and 75. The questions
to be resolved on the appeal after the remand are (1) should
benefits be limited to two-thirds of an injured employee's aver-
age weekly wage at the time of the injury as an absolute
ceiling on differential benefit payments by the second injury
fund, and (2) what method of calculation should be used to
compute the 5% benefit reductions required by statute for the
recipient of a total and permanent disability award after he
reaches age 65? *Held:*

1. The WCAB properly decided that the limitation of two-
thirds of an injured employee's average weekly wage at the
time of injury is a ceiling governing the calculation of differen-
tial benefit payments by the second injury fund when there are
increases in the maximum benefits set by the bureau of work-
er's compensation but that when the minimum rates exceed the
two-thirds limitation, the minimum becomes the floor beneath
which total payments may not fall.

2. The only correct formula for calculating benefits for totally
and permanently disabled employees who attain age 65 is to set
down employer and second injury fund statutory reductions in
payments in separate columns for each year after age 65 until
payments by both have been reduced by 50%. Differential
increases made by the bureau of worker's compensation prior
to the recipient's 65th birthday continue to be paid by the fund
but any increases after the recipient's 65th birthday are not
included. The WCAB erred in concluding that plaintiff should
receive incremental increases from the second injury fund
between ages 65 and 75.

Affirmed in part, reversed in part, and remanded.

1. WORKMEN'S COMPENSATION — WORKER'S DISABILITY ACT — DATE OF
    INJURY — SECOND INJURY FUND — DIFFERENTIAL BENEFIT
    PAYMENTS — TWO-THIRDS LIMITATION — STATUTES.
    Employees who are or become disabled on or after July 1, 1968,
        shall receive differential benefit payments from the second
        injury fund in accordance with the limitation to two-thirds of
        the average weekly wage at time of injury as provided by the
        Worker's Disability Compensation Act (MCL 418.351[1],
        418.355; MSA 17.237[351][1], 17.237[355]).

2. STATUTES — CONSTRUCTION — ADMINISTRATIVE INTERPRETATION.

The interpretation given a statute by those charged with the statute's administration is given great weight and is not to be overruled without the most cogent of reasons.

3. WORKMEN'S COMPENSATION — WORKER'S DISABILITY ACT — EMPLOYEE BENEFITS — TWO-THIRDS LIMITATION — MINIMUM WEEKLY RATES — STATUTES.

An injured employee's benefits are generally held at two-thirds of his average weekly wage at the time of injury; however, under a section of the Worker's Disability Compensation Act, the Director of the Bureau of Worker's Disability Compensation establishes minimum weekly rates of compensation and whenever the minimum rate as so established exceeds the two-thirds limitation, the minimum rate prevails (MCL 418.355; MSA 17.237[355]).

4. WORKMEN'S COMPENSATION — SECOND INJURY FUND — MINIMUM RATES — DIFFERENTIAL BENEFITS — ADJUSTMENTS — STATUTES.

A permanently and totally disabled employee may receive differential benefits from the second injury fund equal to the difference between what he was receiving from his employer at the time of his injury and the adjusted minimum rate set at a later date by the Bureau of Worker's Disability Compensation (MCL 418.521[2]; MSA 17.237[521][2]).

5. WORKMEN'S COMPENSATION — BENEFITS — TWO-THIRDS LIMITATION.

A present day applicant for total and permanent disability is limited to benefits equal to two-thirds of his average weekly wage.

6. WORKMEN'S COMPENSATION — EMPLOYERS — SECOND INJURY FUND — REDUCTION OF BENEFITS — DIFFERENTIAL INCREASES — METHODS OF COMPUTATION.

The proper method for determining how total and permanent benefits should be split between an employer and the second injury fund after a recipient reaches age 65 is to set down employer and second injury fund statutory reductions in payments in separate columns for each year until payments by both the employer and the fund have been reduced by 50%; differential benefit increases made by the Bureau of Workmen's Compensation prior to the recipient's 65th birthday continue to be paid by the fund but any increases after the recipient's 65th birthday are not included; if the total amount paid by the employer and the fund combined falls below the statutory

minimum, the difference between that total and the minimum rate must be paid by the fund.

7. WORKMEN'S COMPENSATION — TOTAL DISABLEMENT — AGE 65 — REDUCTION OF BENEFITS — STATUTES.

An employee receiving or with a right to weekly benefits for total and permanent disability who reaches or has reached or passed the age of 65 is entitled to weekly payments for each year following his 65th birthday; however, such benefits shall be reduced by 5% of the weekly payment paid or payable at age 65, but not less than 50% of the weekly benefit paid or payable at age 65, so that on his 75th birthday the weekly payments shall have been reduced by 50%, after which there shall be no further reduction for the duration of the employee's life; in no case shall the weekly payments be reduced below the minimum weekly benefit provided by statute (MCL 418.357; MSA 17.237[357]).

*Kelman, Loria, Downing, Schneider & Simpson* (by *Robert W. Howes)*, for Arthur R. Wemmer.

*Lacey & Jones* (by *John L. Salter)*, for Liberty Mutual Insurance Company.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Eileen D. Zielesch* and *Joseph M. Binno,* Assistants Attorney General, for the Second Injury Fund.

Before: ALLEN, P.J., and D. E. HOLBROOK, JR., and M. J. KELLY, JJ.

ALLEN, P.J., Do the provisions of MCL 418.351(1); MSA 17.237(351)(1) limiting workmen's compensation benefits to two-thirds of the injured party's average weekly wage at the time of the injury place an absolute ceiling on differential benefit payments by the second injury fund resulting from increases in maximum benefits payable under MCL 418.355; MSA 17.237(355)? What method of calculation should be used to compute

the 5% benefit reductions required by MCL 418.357; MSA 17.237(357) for the recipient of a total and permanent diability award who attains age 65? These questions, the second of which is of first impression, are raised on return of this case from the Workmen's Compensation Appeal Board pursuant to remand in this panel's unpublished per curiam opinion released August 9, 1978.[1]

In proceedings which are no longer disputed, plaintiff was found totally and permanently disabled from a work-related injury occurring on November 4, 1968. At the time of the injury, plaintiff's average weekly wage was $150.80. Two-thirds of that amount is $100.53. The statutory maximum benefit limit then in effect was $69. Because of that limit, the initial award to plaintiff was $69 per week, payable in full by his employer's insurance carrier. Between 1968 and 1973, the maximum benefit limit was increased on several occasions pursuant to MCL 418.355; MSA 17.237(355). These increases were absorbed by defendant second injury fund pursuant to MCL 418.521; MSA 17.237(521). During calendar year 1973, the total payment to plaintiff was $99 per week—$69 from the insurance carrier and $30

[1] The unpublished August 9, 1978, opinion affirmed in part and remanded in part a Workmen's Compensation Appeal Board (WCAB) opinion dated December 21, 1976. As to three issues the WCAB was affirmed: (1) that under MCL 418.357(1); MSA 17.237(357)(1) the 5% reduction in benefits commences on the recipient's 65th birthday, and not on the 66th birthday; (2) differential benefit payments made by the second injury fund before the recipient reaches age 65 are subject to later 5% annual reduction under MCL 418.357(1); MSA 17.237(357)(1); (3) Section 357(1) is not unconstitutional as violative of equal protection of the law as to recipients over age 65, or as to totally and permanently disabled recipients over age 65. Plaintiff filed leave to appeal these three issues to the Michigan Supreme Court. The application for leave was denied 405 Mich 835 (1979). On two issues, *viz:*—the two questions appearing above—the Court remanded to the WCAB which issued its opinion on remand August 28, 1978. This Court retained jurisdiction.

from defendant second injury fund. The statutory maximum benefit was again increased to $106 effective January 1, 1974. With this new increase, plaintiff's total benefits reached (actually exceeded) the ceiling imposed by the two-thirds of average weekly wage limitation in MCL 418.351; MSA 17.237(351). Because of that ceiling, the imposition of which is contested by plaintiff in Issue I of this opinion, payment to plaintiff during calendar year 1974 was in the weekly sum of $100.53, *i.e.,* two-thirds of his average weekly wage when he suffered the compensable injury. In 1975, 1976, and 1977, the maximum was increased to $112, $120 and $132 respectively but, because of the two-thirds limitation, payments to plaintiff remained at $100.53. Then, on January 1, 1978, the maximum was raised to $147 and the minimum to $108. Because the minimum then exceeded the two-thirds limitation, plaintiff's payments were raised.

Meanwhile, on January 12, 1974, plaintiff reached age 65. At that point, the age 65 reduction provisions in MCL 418.357; MSA 17.237(357)—as interpreted by the WCAB—called for a 5% reduction in benefits. At that point a dispute arose as to whether differential benefits were subject to the 5% age reductions and, if so, which of several methods of calculation should be employed. The dispute came before the WCAB which, on December 21, 1976, issued the opinion referred to in footnote 1, and which was affirmed in part and remanded in part to the WCAB by the unpublished per curiam opinion of this panel on August 9, 1978. The WCAB entered its opinion on the remand on August 25, 1978, and returned the cause to this panel. Issues posed by the August 25, 1978, opinion are the subject of this opinion.

*I. Does the Provision in MCL 418.351(1); MSA
17.237(351)(1) Limiting Benefits to Two-Thirds of a
Recipient's Average Weekly Wage at the Time of
Injury Provide an Absolute Ceiling on Differential
Benefit Payments by the Second Injury Fund
Resulting from Increases in the Maximum Benefits
Pursuant to MCL 418.355; MSA 17.237(355)?*

Plaintiff contends that § 351(1) only limits the
employer's contribution to two-thirds of the recipi-
ent's average weekly wage at the time of injury,
and that the section does not apply to the differen-
tial benefits required to be paid from the second
injury fund. On remand, all WCAB members re-
jected plaintiff's construction, saying:

"Unresolved, and returned to this Board for an ex-
pression of its opinion, is the question of whether the
provision in Section 351 [MCL 418.351(1)] limiting bene-
fits to two-thirds of an injured employee's average
weekly wage is an absolute ceiling on both employer
and Second Injury Fund payments (an absolute ceiling,
that is, until such time as *minimum* rates for total
disability exceed the two-thirds average weekly wage, at
which time said minimums become the floor beneath
which total payments may not fall, per *Jolliff v Ameri-
can Advertising Co,* 49 Mich App 1; [211 NW2d 260
(1973)], and *Vrahamdedes v McDonald's of Ann Arbor,*
1978 WCABO 1624, No. 312, dated June 14, (1978). Believ-
ing the Court to have (correctly) answered this question
in the affirmative on the only occasion the question was
before the Court *[Kunde v Teesdale Lumber Co,* 55
Mich App 546; 223 NW2d 67 (1974)], we answer 'yes'.
Interestingly, both here and in *Kunde, supra,* the par-
ties declined to raise the issue before the Board and
introduced it instead at the Court."

The obligation of the second injury fund to pay
differential benefits first appeared in § 9(a) in 1955
PA 250. Section 9(a) was amended by 1956 PA 195

to read that payments should be made "according to the full rate provided in the schedule of benefits". This language was repeated verbatim when the statutue was amended by 1965 PA 44. The question of whether the statute as so worded required the second injury fund to pay in excess of the two-thirds limitation first arose in *King v Second Injury Fund,* 382 Mich 480; 170 NW2d 1 (1969). In June, 1966, the hearing referee held the limitation applied. That decision was affirmed in a 4-3 decision by the Workmen's Compensation Appeal Board in 1967. 1967 WCABO 941. Bypass of the Court of Appeals was granted by the Supreme Court which, in September, 1969, reversed, holding that the two-thirds limitation did not apply because to hold otherwise would disregard the statutory words "according to the *full rate* provided in the schedule of benefits". *King v Second Injury Fund, supra.*

Within a few months following the split decision of the WCAB in *King,* legislation was introduced to amend the statute. In the amendment process, the words "according to the full rate provided in the schedule of benefits" were deleted. That legislation became law in 1968 PA 227, effective July 1, 1968. Elimination of the quoted words caused the fund trustees to request an opinion from the Attorney General as to whether the fund was still required to pay differential benefits without regard to the two-thirds limitation for injuries occurring after July 1968 (the effective date of the act). The Attorney General concluded that, as so amended, the two-thirds limitation would apply:

"The *King* decision is no longer applicable where the injury occurred subsequent to June 30, 1968 because the statutory language that provided for payments from the second injury fund 'according to the full rate pro-

vided in the schedule of benefits' was deleted by Act 277, PA 1968. Therefore, in respect to employees who are or become disabled because of an injury occurring on or after July 1, 1968, they shall receive differential benefits in accordance with the two-thirds limitation." OAG, 1969-1970, No. 4711, p 187 (November 9, 1970).

We agree with the Attorney General. Any other conclusion would disregard the basic rules of statutory construction.

The constitutionality of the statute as interpreted by the Attorney General's opinion was challenged on grounds of violation of equal protection of the laws in *Kunde v Teesdale Lumber Co,* 55 Mich App 546; 223 NW2d 67 (1974). Our Court held that there were legitimate legislative purposes served by application of the two-thirds limitation to differential benefit payments for injuries occurring after June 30, 1968. We do not believe *Kunde* decided that the 1968 amendment imposed a two-thirds limitation on payments for employees injured subsequent to June 30, 1968. In this respect we disagree with the WCAB and agree with plaintiff. *Kunde* assumed that the Attorney General's construction of the statute was correct and, *based on that assumption,* decided only the question of the law's constitutionality. But our agreement with plaintiff on this narrow point is more than offset by the striking fact that although four years had elapsed since the Attorney General's opinion no one, not even the claimants, challenged the construction given the statute. Only the constitutionality of the statute was questioned until the instant suit was commenced. The WCAB, the second injury fund and claimants have all accepted the two-thirds limitation on differential benefits for post-June 30, 1968, injuries. The interpretation given a statute by those charged with the statute's

administration is given great weight and is not to be overruled without the most cogent of reasons. *Magreta v Ambassador Steel Co,* 380 Mich 513, 519; 158 NW2d 473 (1968), *Miller v Dunn Paper Co,* 47 Mich App 471, 478; 209 NW2d 519 (1973).

The main thrust of plaintiff's claim that the Attorney General erred in ruling that the 1968 amendment reversed *King* is that to so conclude is inconsistent with the then legislative intent to increase benefits. Why should the Legislature create a plan to provide additional benefits for totally and permanently disabled persons—obviously to cope with rising prices—and then proceed to limit the amount to two-thirds of the injured person's wage at the time of the injury. The argument is flawed in three respects.

*First,* it is not true that the injured person's benefits are held at two-thirds of the average weekly wage at the time of injury. Under the statute, the Director of the Bureau of Worker's Disability Compensation establishes minimum weekly rates of compensation. Whenever the minimum rate as so established exceeds the two-thirds limitation, the minimum rate prevails. *Stein v Director, Bureau of Workmen's Compensation,* 77 Mich App 169; 258 NW2d 179 (1977). In 1977, the minimum rate was $93 for a disabled employee with one dependent. In 1978, it was raised to $108. Immediately, the second injury fund increased its differential payment to plaintiff to $39 per week which is the difference between the employer's basic weekly rate of $69 per week and the 1978 minimum benefit rate of $108.

*Second,* plaintiff errs in construing § 521(2) as automatically allowing him the present-day maximum rate. Section 521(2) provides that a permanently and totally disabled person shall receive

differential benefits equal to the difference be-
tween what he is now receiving from his employer
under the provisions in effect at the time of his
injury "and the amount now provided" by the act.
No provision of the act allows a present-day appli-
cant to receive the maximum benefit rate if it
exceeds two-thirds of his average weekly wage.
The present-day applicant is limited to two-thirds
of the average weekly wage. Thus, if plaintiff were
allowed to receive the present maximum rate
without regard to the two-thirds limitation, he
would receive more than is provided for a present-
day applicant. While it is true that a present-day
applicant's average weekly wage generally would
be greater than that of an applicant from previous
years, the adjustment of the minimum rate, as
explained above, remedies this situation. If the
Legislature had intended so major a change we
believe it would have clearly so stated.

*Third,* sound policy reasons exist for imposing
the two-thirds limitation. The limitation avoids the
unfairness in giving all recipients the same yearly
wage. In the absence of any limitation a party,
who at the time of injury was earning less than
the then average weekly wage, would receive the
same increase as a party who was earning more
than the average weekly wage at the time of
injury. The two-thirds limitation avoids this un-
fairness. Further, as the *Kunde* Court pointed out,
budgetary[2] and other reasons may well have led

---

[2] In our opinion August 9, 1978, ordering remand, request was
made that the fund advise the Court as to the number of cases which
would be affected by the Court's eventual decision. In response to this
request, the fund stated that as of August 31, 1978, the fund was
paying benefits on 1208, of which 721 involved injuries prior to July
1, 1968, and 487 cases involving injury after July 1, 1968. The 721
case claimants are receiving benefits "at the full rate" in accordance
with *King, supra,* and the remaining 487 case claimants are paid
subject to the two-thirds limitation until such time as the minimum
rate for total disability exceeds the two-thirds limitation. Of the 487

the Legislature to impose the two-thirds limitation.

"There are potentially many rational reasons why the Legislature constructed the classification it did. It may have anticipated the *King, supra,* ruling and its effects, and thus sought to equalize the compensation responsibility owed by employers and the Second Injury Fund. It may have felt *that any added burden placed on the Second Injury Fund by requiring it to pay the full rate as set out in the schedule of benefits might damage the fund, and thus destroy its effectiveness.*" (Emphasis supplied.) *Kunde, supra,* at 557.

This Court's request in its opinion on remand that cost data be supplied was made for the purpose of possibly identifying legislative intent. The data so furnished in response to our request, and summarized in footnote 2, provides a sound basis for the Legislature to conclude that continuation of payments "at the full rate" would impose an excessive drain on the fund.

*II. Given the Following Sequence of Events, How Should Differential Benefit Payments by the Second Injury Fund be Calculated? (1) Award for Total and Permanent Disability, (2) Increase in Maximum Rates Causing Differential Benefits by the Second Injury Fund, (3) Recipient Reaches Age 65, (4) Maximum Rates are Further Increased and Minimum Rate Exceeds the Two-Thirds Limitation.*

Five proposed methods of calculating differential

cases, 101 are presently being increased each year to keep the claimant at the § 355 minimum rates. Only 31 cases are being reduced under the § 357 age 65 reduction. Without the § 351(1) two-thirds limitation, the fund estimated that for calendar 1978, the fund's payments to present claimants would be increased by $360,262.24.

payments to a recipient who has attained age 65 were submitted for this Court's consideration in its opinion August 9, 1978. The respective methods are labeled A, B, C, D, E. In our August 9, 1978, opinion we rejected method B as totally inconsistent with the statutory language and remanded the other proposals to the appeal board for further consideration. In its opinion on remand, the WCAB retained its separate positions on method C (board panel majority) and D (board panel minority). Plaintiff's method E was calculated on the assumption that the two-thirds limitation did not apply. In view of our discussion in Issue I, *supra,* that the limitation does apply, method E is rejected. This leaves only methods A, C and D as the viable alternatives for our consideration at this time.

Under method A, the method supported by the second injury fund, the compensation payable by the employer on the claimant's 65th birthday, and the compensation payable by the fund on the same date, are set down in separate columns. In the instant case, the respective totals are $69 and $31.53, or a total of $100.53, which is two-thirds of plaintiff's average weekly wage of $150.80. On January 12, 1974, (the day after plaintiff's 65th birthday) the $69 is reduced by 5% ($3.45) and the $31.53 is reduced by 5% ($1.58). Thereafter, for nine consecutive years, the employer's share is each year reduced by $3.45, and the fund's share is each year reduced by $1.58. Thus, on the 10th year following plaintiff's 65th birthday, payments by both the employer and the fund will have been reduced by 50%. The differential benefit increases made prior to the 65th birthday continue to be paid by the fund but any such increases made

after the 65th birthday are not included.[3] How-
ever, if the total amount then actually *paid* by the
employer and the fund combined, falls below the
statutory minimum, the difference between that
total and the minimum rate must be paid by the
fund. In January, 1978, the minimum rate was
raised from $93 to $108, an amount which for the
first time exceeded two-thirds of plaintiff's average
weekly wage of $100.53. However, as will be dis-
cussed later, the fund claims that under method A
the differential rate should be increased by the
difference between the employer's basic rate before
the first 5% discount was taken ($69) and the
minimum rate of $108 rather than the difference
between the amount actually being paid by the
fund, *viz*—the employer's rate as then discounted
($55.20)—and $108.

Method C, the method espoused by the appeal
board majority, is the same as method A except
that all incremental increases made during the 10-
year period and to which plaintiff would be enti-
tled had he not attained age 65, are added to the
fund's payment, with no reduction in those in-
creases. Under method C, the injured party re-
ceives the incremental increases between ages 65
and 75, whereas under method A they are not
paid.

Method D was proposed by the appeal board
minority. The total amount of benefits to which
the claimant is entitled had his 65th birthday not
intervened, is first determined. Of this total, the
employer pays no more than the employer would

---

[3] Prior to plaintiff's 65th birthday, six incremental increases total-
ing $37 had been made. Plaintiff received all of these, subject to the
two-thirds limitation which in plaintiff's case was $31.53. From 1975-
1978, incremental increases of $6, $8, $12 and $5 were announced.
Under method A none of the 1975-1978 increases are chargeable to
the fund.

have paid on the 65th birthday and is entitled to a 5% reduction each year. The difference between the employer's amount and the total sum due if claimant's 65th birthday had not occurred is added to the fund in a percentage equal to 100% minus 5% times the number of birthdays after age 64. Under method D, the claimant receives the incremental increases less 5% of the total amount the first year, 10% the second, etc. Thus, on his 75th birthday, the claimant receives 50% of the compensation which he would have received had he not become 65, rather than 50% of the amount to which he was entitled on his 65th birthday.

The difference between the three methods may be summarized as follows. Under method A, the claimant receives no part of differential benefits paid while claimant is between age 65 and age 75. Under method C, the claimant receives such differential payments in full but the differential benefits due before age 65 are reduced 5% each year. Under method D, the claimant receives the differential payments, less 5% of the total payment the first year had the 65th birthday not occurred, 10% the second year, etc. The respective weekly payments due plaintiff in 1978 under each method is set forth below.[4] The question posed is which of the three methods complies with the statute.

The statutory authority for age 65 reductions is found in MCL 418.357; MSA 17.237(357) which reads:

"Sec. 357. When an employee who is receiving weekly

[4] On January 13, 1978, the fifth reduction of 5% was made on the compensation payable by the employer ($69) and the compensation payable by the fund ($31.53) on the claimant's 65th birthday, January 12, 1974. On January 1, 1978, the minimum rate had been raised from $93 to $108. Since the minimum rate of $108 exceeded the total sum which otherwise would be due plaintiff, the minimum rate prevails.

payments or is entitled to weekly payments reaches or has reached or passed the age of 65, the weekly payments for each year following his sixty-fifth birthday shall be reduced by 5% of the weekly payment paid or payable at age 65, but not to less than 50% of the weekly benefit paid or payable at age 65, *so that on his seventy-fifth birthday the weekly payments shall have been reduced by 50%;* after which there shall be no further reduction for the duration of the employee's life. In no case shall weekly payments be reduced below the minimum weekly benefit as provided by this act." (Emphasis supplied.)

Method D is conspicuously incompatible with the provisions of § 357—an incompatibility noted in the appeal board majority's analysis of method D:

"Sec. 357 of the Act states in part: 'payments for each year following his 65th birthday shall be reduced by 5% of the weekly payment *paid or payable at age 65.*' (Emphasis added.) It does not state that payments for each year following his 65th birthday shall be reduced by 5% of the total weekly payment payable in a year subsequent to the claimant's 65th birthday. The statutory reduction is clearly a *fixed sum* and is 5% of the payments *paid or payable at age 65."* (Emphasis in original.)

Method C is only slightly less conspicuously inconsistent with § 357. That section provides for a fixed sum reduction *(viz*—the same dollar amount reduction per year) calculated on the weekly payments "paid or payable at age 65". If differential benefit increases under § 355 are paid after age 65, weekly payments will not have been reduced by 50% at age 75. Only method A complies with the express provisions of the statute. Accordingly, we find that the WCAB erred in applying a different formula in the instant case.

Having approved method A as we have described it we nevertheless find an error in the way it has been calculated by the second injury fund. At page 321, and again in footnote 3, of this opinion we noted that when the minimum rate was raised to $108 in 1978, the fund immediately increased its differential payment to $39 per week, this being the difference between the employer's basic rate before the first 5% discount was taken ($69) and the 1978 minimum benefit rate of $108. The language in the last sentence of § 357(1) "In no case shall *weekly payments* (emphasis supplied) be reduced below the minimum weekly benefit as provided in this act" is clear and unambiguous. To us, "weekly payments" means payments actually being made rather than weekly payments made at an earlier date years back when the employee first attained age 65. We believe that a proper application of the statute, and consequently method A, requires the fund to increase its payment by $52.80—this being the difference between what the employer was actually paying on January 1, 1978, ($55.20) and $108. The employer's actual payment of $55.20 plus a fund contribution of $52.80 (rather than $39) would total $108.

This brings us to the question of retroactivity which, in our former opinion, we asked the parties and the WCAB to address on remand. At that time we did not know that when the case returned to us we would be approving method A, the method which has always been applied by the fund. Because the fund's method has been approved except for the fund's error in computing the amount due in cases where the injured party has attained 65, and since only 31 cases are being reduced,[5] the fiscal problem of correcting past error is *de mini-*

---

[5] See footnote 2, *supra*.

*mis.* Legally, there is no question of retroactivity since this is the first case to construe the method of age-65 reductions required under MCL 418.357; MSA 17.237(357). This is not a case of further development of an old injury or an application for further compensation, thus neither the one-year back rule, MCL 418.833(1); MSA 17.237(833)(1), nor the two-year back rule, MCL 418.381(2); MSA 17.237(381)(2), apply.

### In Summary

As to Issue I, we hold that the two-thirds provision of § 351(1) provides an absolute ceiling on differential benefit payments by the second injury fund resulting from increases in the maximum benefits made pursuant to § 355. We do so for the reasons set forth by the WCAB in the opinion on remand. We reject the argument that our holding is totally incompatible with the purpose for which differential benefits were authorized. When the minimum rates exceed the two-thirds limitation, the minimums become the floor beneath which total payments may not fall. When minimum rates are properly applied, the increase in benefits is substantial. On Issue I the WCAB is affirmed.

As to Issue II, we hold that method A is the only correct formula for calculating benefits for persons who attain age 65, with the correction that the fund is liable for the full dollar difference between the actual benefits then being paid by the employer and the established minimum weekly benefit rate. On Issue II, the WCAB is reversed and the cause remanded for payment by the fund in accordance with this opinion.

Affirmed in part, reversed in part and remanded in accordance with this opinion. No costs, neither party having prevailed in full.