BROWN v BRIMLEY AREA SCHOOLS

Docket No. 122564. Submitted May 14, 1991, at Lansing. Decided
December 17, 1991, at 9:10 A.M. Leave to appeal denied, 439
Mich —.

Sheila I. Brown sustained total and permanent disability in a
work-related accident while employed by the Brimley Area
Schools and was awarded weekly workers' compensation bene-
fits of $85.11 by the Workers' Compensation Appellate Commis-
sion. The weekly benefit was consistent with MCL 418.351(1);
MSA 17.237(351)(1) and MCL 418.356(3); MSA 17.237(356)(3),
under which minimum weekly benefits for total and permanent
disability must be eighty percent of the injured worker's aver-
age weekly wage or twenty-five percent of the state average
weekly wage, whichever is greater. The commission ordered
Brimley and its insurer, Granite State Insurance Company, to
pay $35.84 a week, which equaled eighty percent of Brown's
average weekly wage, and ordered the Second Injury Fund to
pay $49.27 a week, which was the difference between the award
and the amount payable by Brimley and its insurer. The
Second Injury Fund appealed by leave granted.

The Court of Appeals *held:*

Pursuant to MCL 418.521(2); MSA 17.237(521)(2), the Second
Injury Fund is obligated to pay for increases in benefits beyond
those in effect at the time a worker becomes totally and
permanently disabled. The employer is liable for payment of all
weekly benefits provided under the workers' compensation act
on the date of injury.

In this case, MCL 418.356; MSA 17.237(356), which provides
that the minimum weekly benefit for total and permanent
disability must equal twenty-five percent of the state average
weekly wage, was in effect on the date of Brown's injury.
Therefore, the entire award of weekly benefits is the liability of
Brimley and its insurer.

Reversed.

REFERENCES
Am Jur 2d, Workmen's Compensation §§ 340, 367-369, 659, 660.
See the Index to Annotations under Workers' Compensation.

WORKERS' COMPENSATION — TOTAL AND PERMANENT DISABILITY —
    SECOND INJURY FUND — DIFFERENTIAL BENEFITS.
    Where a worker's injury results in total and permanent disabil-
    ity, the Second Injury Fund is obligated to pay for increases in
    benefits beyond those in effect at the time of disability; the
    employer is liable for payment of all weekly benefits provided
    under the workers' compensation act on the date of injury
    (MCL 418.521[2]; MSA 17.237[521][2]).

*Thomas J. Veum,* for Sheila I. Brown.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, and *Morrison Zack,* Assistant Attorney General, for the Second Injury Fund.

Before: MARILYN KELLY, P.J., and MACKENZIE and GRIBBS, JJ.

PER CURIAM. Defendant Second Injury Fund appeals by leave granted from a decision of the Workers' Compensation Appellate Commission ordering the fund to pay plaintiff $49.27 in weekly differential benefits. We reverse.

Under § 351(1) of the Workers' Disability Compensation Act, MCL 418.351(1); MSA 17.237(351)(1), an employee who is totally and permanently disabled is entitled to weekly benefits equal to eighty percent of the employee's average weekly wage. Section 356(3) of the act, MCL 418.356(3); MSA 17.237(356)(3), provides that such weekly benefits should amount to at least twenty-five percent of the state average weekly wage at the time of the employee's injury. Thus, under the act, a totally and permanently disabled worker is entitled to weekly workers' compensation benefits based on the worker's average weekly wage, or twenty-five percent of the state average weekly wage, whichever is greater.

In this case, plaintiff was totally and perma-

nently disabled as the result of an October 1982 accident that occurred during the course of her employment with the Brimley Area Schools. On the basis of her average weekly wage, plaintiff's employer was required to pay her $35.84 in weekly workers' compensation benefits. At the time of plaintiff's injury, however, twenty-five percent of the state average weekly wage equalled $85.11. Pursuant to § 356(3), therefore, plaintiff was awarded total weekly compensation in that amount.

At issue in this case is who should be responsible for paying plaintiff's benefits. The parties agree that plaintiff's employer was responsible for paying plaintiff weekly benefits of $35.84. The dispute is whether the employer or the Second Injury Fund should be responsible for the $49.27 difference between those benefits and the benefits based on the state average weekly wage at the time of plaintiff's injury. The WCAC concluded that the fund was responsible for the differential benefits. We disagree and accordingly reverse.

Resolution of this case requires us to construe § 356. That statute provides in relevant part:

(1) An injured employee who, at the time of the personal injury, is entitled to a rate of compensation less than 50% of the then applicable state average weekly wage as determined for the year in which the injury occurred pursuant to section 355, may be entitled to an increase in benefits after 2 years of continuous disability. After 2 years of continuous disability, the employee may petition for a hearing at which the employee may present evidence, that by virtue of the employee's age, education, training, experience, or other documented evidence which would fairly reflect the employee's earning capacity, the employee's earning capacity would have been expected to increase. Upon presentation of this evidence, a hearing

referee or workers' compensation magistrate, may order an adjustment of the compensation rate up to 50% of the state average weekly wage for the year in which the employee's injury occurred. The adjustment of compensation, if ordered, shall be effective as of the date of the employee's petition for the hearing. *The adjustments provided in this subsection shall be paid by the carrier on a weekly basis. However, the carrier and the self-insurers' security fund shall be entitled to reimbursement for the payments from the second injury fund created in section 501.* There shall be only 1 adjustment made for an employee under this subsection.

(2) The minimum weekly benefit for death under section 321 shall be 50% of the state average weekly wage as determined under section 355.

(3) *The minimum weekly benefit for 1 or more losses stated in section 361(2) and (3) [defining partial disability and total and permanent disability, respectively] shall be 25% of the state average weekly wage as determined under section 355.* [Emphasis added.]

Section 521(2) of the act, MCL 418.521(2); MSA 17.237(521)(2), sets forth the Second Injury Fund's obligation to pay differential benefits to totally and permanently disabled persons. It provides in relevant part:

(2) Any permanently and totally disabled person . . . who is entitled to receive payments of workmen's compensation in amounts per week of less than is presently provided in the workmen's compensation schedule of benefits for permanent and total disability, and for a lesser number of weeks than the duration of such permanent and total disability, *after the effective date of any amendatory act by which his disability is defined as permanent and total disability, or by which the weekly benefits for permanent and total disability are increased, shall receive weekly from the car-*

*rier on behalf of the second injury fund differen-
tial benefits equal to the difference between what
he is now or shall hereafter be entitled to receive
from his employer under the provisions of this act
as the same was in effect at the time of his injury,
and the amounts now provided for his permanent
and total disability by this or any other amenda-
tory act, with appropriate application of the provi-
sions of sections 351 to 359.* [Emphasis added.]

Both the Supreme Court and this Court have
held that the Second Injury Fund's statutory obli-
gation is to pay for increases in benefits beyond
those in effect at the time the employee becomes
totally and permanently disabled; the employer is
liable for payment of all weekly benefits provided
by the act on the employee's date of injury. See
*Kidd v General Motors Corp,* 414 Mich 578; 327
NW2d 265 (1982); *Wemmer v Nat'l Broach &
Machine Co (After Remand),* 89 Mich App 312,
321-322; 280 NW2d 845 (1979).

In this case, § 356—including the provision that
the minimum weekly benefit paid to a totally and
permanently disabled person shall equal at least
twenty-five percent of the state average weekly
wage—was added in 1980, effective January 1,
1982, and amended in 1982, effective March 10,
1982. The provision was therefore in effect at the
time of plaintiff's October 1982 injury. Consistent
with the principle that the Second Injury Fund is
not liable for payment of weekly benefits provided
under the act on the date of the injury, we must
conclude that the fund is not responsible for pay-
ing the § 356(3) differential benefits. The Second
Injury Fund's liability is confined to increases in
benefits that may take effect after plaintiff's date
of injury.

Plaintiff contends that the language of § 356(1)
provides support for the proposition that the Sec-

ond Injury Fund should be liable for her differential benefits. We disagree. It is apparent that § 356(1) relates to increases in basic benefits after two years of continuous disability. It is thus consistent with the fund's general obligation to reimburse for increases in benefits after the date of injury. The same is not true of the twenty-five percent figure in § 356(3) where the injury occurs after § 356 took effect, because the twenty-five percent minimum weekly benefit is then part of the injured worker's basic compensation.

The Second Injury Fund's statutory obligation is to pay increases in benefits above the amount the employee is entitled to receive from the employer under the provisions of the act "as the same was in effect at the time of his injury." Section 521(2); *Kidd, supra.* Consistent with this statutory obligation, we are satisfied that the correct interpretation of § 356(3) is that it is not the fund's obligation, but the employer's, to pay any differential benefits necessary for a totally and permanently disabled worker's weekly benefits to equal the twenty-five percent minimum. Accordingly, we reverse.

Reversed.