KING *v.* SECOND INJURY FUND.

1. STATUTES—CONSTRUCTION OF STATUTES.
   Every word, clause, and sentence of a statute must be given
   effect, if possible, so that no part will be inoperative or
   superfluous, void or insignificant, and so that no one section
   will destroy another unless the provision is the result of
   obvious mistake or error.

2. WORKMEN'S COMPENSATION—PERMANENT AND TOTAL DISABILITY—
   BENEFIT RATE—SECOND INJURY FUND.
   "Full", as used in the part of the workmen's compensation
   act providing continuing payments from the second injury
   fund after a person is entitled to compensation from the em-
   ployer under the act for permanent and total disability
   according to the full rate provided in the schedule of benefits,
   relates to the rate determined by the immediately preced-
   ing sentence which states that a claimant shall be paid the
   *amount* of the difference between what he is now or shall
   hereafter be entitled to receive from his employer and the
   *amount* now provided for permanent and total disability
   (CL 1948, § 412.9, as amended by PA 1965, No 44).

3. SAME—AMENDMENTS—SECOND INJURY FUND—FULL RATE—LIM-
   ITATION.
   Amendments to the workmen's compensation act in 1955 and
   1956 to provide for payment from the second injury fund
   "according to the full rate provided in the schedule of
   benefits", took the place of the 1927 enactment which con-
   tained a limitation of weekly benefits to 2/3 of the em-
   ployee's average weekly wage at the time of injury; thus, a
   claim by plaintiff, who has been totally and permanently
   disabled since 1948, that the limitation applies only to the
   employer and not to the second injury fund is valid and

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 50 Am Jur, Statutes § 358.
[2, 3] 58 Am Jur, Workmen's Compensation §§ 293–295.
[4] 5 Am Jur 2d, Appeal and Error § 1009.

plaintiff is entitled to the current benefit rate without the 2/3 limitation, for to retain the limitation would defeat the theory underlying the creation of the second injury fund (CL 1948, § 412.9, as last amended by PA 1965, No 44).

4. COSTS—WORKMEN'S COMPENSATION—PUBLIC QUESTION.

No costs are awarded on appeal from workmen's compensation appeal board determination that the second injury fund's liability for full rate of benefit was limited to 2/3 of plaintiff's average weekly rate at the time of injury, where the limitation was held inapplicable, a public question being involved (CL 1948, § 412.9, as last amended by PA 1965, No 44).

Appeal from Workmen's Compensation Appeal Board. Submitted May 6, 1969. (Calendar No. 21, Docket No. 51,945.) Decided September 3, 1969.

Eva King, after receiving from Ford Motor Company, employer, benefits under the workmen's compensation act as a totally and permanently disabled employee, petitioned for allowance of benefit rates provided by 1965 amendment. Award by hearing referee limited to 2/3 of average weekly wage at time of injury. Plaintiff appealed to the Workmen's Compensation Appeal Board. Affirmed. Leave to bypass Court of Appeals and leave to appeal granted plaintiff. Reversed and remanded for entry of an order in accordance with opinion.

*Kelman, Loria, Downing & Schneider (John W. Simpson, Jr.,* of counsel), for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *John J. Long,* Assistant Attorney General, for Second Injury Fund.

KELLY, J. On January 16, 1948, Eva King was employed by the Ford Motor Company at an average

weekly wage of $55.80. On that date, in the course of her employment, her left arm was amputated while she was operating a straddle milling machine.

Her claim for workmen's compensation resulted in the workmen's compensation commission's decision of May 13, 1949, awarding benefits of $21 per week compensation.

Plaintiff's amended application requesting benefits for total and permanent disability against Ford Motor Company and the second injury fund was granted, and the referee's order of February 19, 1964 (not appealed) provided that Ford Motor Company pay compensation at the rate of $21 per week from February 1, 1957 to August 16, 1957, and for total and permanent disability at the rate of $21 per week from August 17, 1957 to June 1, 1962. The hearing referee further ordered that:

"Plaintiff is totally and permanently disabled as of January 16, 1948 within the meaning of part 2, § 10(6) of the workmen's compensation act (CL 1948, § 412.10, as last amended by PA 1956, No 195, Stat Ann 1960 Rev § 17.160) and the second injury fund shall pay differential benefits to plaintiff at the rate of $11 per week from 6/25/55 to 7/31/56, inclusive; at the rate of $12 per week from 8/1/56 to 6/1/62, inclusive; at the rate of $33 per week from 6/2/62 and continuing until further order of the department."

We are here concerned with part 2, § 9, para (a), of the workmen's compensation statute[1] as amended in 1955[2] and 1965.[3] The amendments with which

[1] PA 1912 (1st Ex Sess), No 10, part 2, § 9, as amended.
[2] CL 1948, § 412.9, as amended by PA 1955, No 250 (Stat Ann 1955 Cum Supp § 17.159).
[3] CL 1948, § 412.9, as amended by PA 1965, No 44 (Stat Ann 1968 Rev § 17.159).

we are concerned are set forth in the appendix attached to this opinion.

After the 1965 amendment increasing maximum benefits, the director of the second injury fund denied plaintiff's request that she be allowed the current $58 benefit rate provided for a totally and permanently disabled employee with no dependents, and limited the payments so that the total weekly amount paid to plaintiff would not exceed 66-2/3% of her average weekly rate at the time of injury.

On November 4, 1965, plaintiff filed another application for hearing and adjustment of claim, which resulted in a June 1966 decision by the hearing referee, stating:

"It is further ordered that the correct compensation rate payable from defendant, second injury fund, from September 1, 1965, until the further order of the Department is $37.20 (2/3 of average weekly wage at time of injury previously determined to be $55.80)."

Plaintiff's appeal to the workmen's compensation appeal board resulted in four opinions and a 4-to-3 decision affirming the hearing referee.[4]

Application for leave to appeal and to bypass the Court of Appeals was granted by this Court.

The majority opinion of the workmen's compensation appeal board, written by Member Trentacosta, stated:

"I agree with Member Storie that the basic question presented to this appeal board is whether the benefits payable from the second injury fund are limited to an amount not to exceed two-thirds of plaintiff's weekly wage of 1948 ($37.20) or whether she is entitled to receive, from the second injury fund, the maximum amount provided for an em-

[4] 1967 WCABO 941.

ployee with no dependents on and after September 1, 1965 ($58.00). This question, in turn, is answered by determination of what the legislature intended and meant by use of the words 'according to the full rate provided in the schedule of benefits' in the last sentence of section 9, para (a) of part 2 of the workmen's compensation act."

Member Storie was the first to write, and we quote from his opinion as follows:

"Act No 44 of the public acts of 1965 increased the schedule of benefits to provide an employee with no dependents a compensation rate of $58 per week beginning September 1, 1965. Plaintiff herein has no dependents so 'appropriate application' of the provisions of paragraphs (b), (c), (d) and (e) since date of injury is not relevant. Had plaintiff been working in the same capacity at current pay for this job at Ford Motor Company on September 2, 1965 and been injured, she would have in all probability been paid compensation at the rate of $58 per week. She is a person defined to be permanently and totally disabled. She was entitled to receive compensation from her employer after June 25, 1955 in amounts per week of less than is presently provided in the workmen's compensation schedule of benefits for permanent and total disability. 'Any' such permanently and totally disabled person shall after the effective date of any amendatory act, by which his disability is defined as permanent and total disability or by which the weekly benefit for permanent and total disability is increased, receive weekly, without application, from the second injury fund, an amount equal to the difference between what he is now or shall hereafter be entitled to receive from his employer under the provisions of this act and the amount not provided for his permanent and total disability. 'Any' such person would include plaintiff, and there are no contingencies placed upon the direction that she receive the present schedule of

benefits. The plain terms of the 1955 enactment and subsequent amendments direct that any permanently and totally disabled person defined as such by the statute is entitled to receive the difference between the amounts his employer is obligated to pay and the sums he would now be entitled to receive for permanent and total disability. This includes the weekly sum payable as well as the period payable which no one questions is a period different from that controlling at time of the injury here in question. The statute says these benefits are payable when the amount received from the employer is less than presently provided and/or for a period of a lesser number of weeks. Such unambiguous directives require that we hold that plaintiff's proper weekly rate after September 1, 1965 was $58 per week. * * *

"Fortunately, a vast majority of all industrial injuries cause disability of short duration and changes in our economic structure are of insignificant consequence to such an injured employee. However, when injuries cause disability for many years, it stands to reason that the $21 per week paid to Eva King in 1948 would not now buy the same amount of food in 1965. * * *

"If Eva King had earned $100 per week in 1948, there would be no argument here about her right to receive $58 per week beginning on September 1, 1965. Suppose the $21 per week rate that was payable to Eva King in 1948 represented two-thirds of the weekly wage she was receiving at that time ($31.50), would her need for additional sums in 1965 be nil, or did the legislature intend to ignore such an employee's needs simply because her earnings were too small in 1948? I am of the opinion that the legislature's use of the term 'schedule of benefits' was a deliberate choice of words to correct the economic status and require the second injury fund to pay 'any' person defined to be permanently and totally disabled the sums which the legislature

determined to be the needs of an employee, at today's market place. * * *

"Larson's work described the underlying social philosophy · behind compensation liability as follows (Section 2.20, *Larson's Workmen's Compensation Law*):

" 'The ultimate social philosophy behind compensation liability is belief in the wisdom of providing, in the most efficient, most dignified, and most certain form, financial and medical benefits for the victims of work-connected injuries which an enlightened community would feel obligated to provide in any case in some less satisfactory form, and of allocating the burden of these payments to the most appropriate source of payment, the consumer of the product.' "

Member Mahinske signed Storie's opinion.

Chairman Iverson concurred with Member Storie with the second write, and we quote from his opinion:

"When the legislature enacts language in 1965 that grants differential benefits on two conditions, one being where 'the *weekly* benefit for permanent and total disability is *increased*,' thus effectively creating the situation where one is receiving payments 'in amounts per week of less than is presently provided * * * in the schedule of benefits,' I can only conclude that the legislature has to mean rates are to be the sole limitational feature when dealing with the second injury fund after 800 weeks. Weekly benefits could and have only been increased by rate changes, not by amending the two-thirds limitation.

"I believe it must be admitted that to retain the two-thirds limitation in such cases would defeat the theory underlying the creation of the second injury fund and its responsibilities. In dealing with cases beyond 800 weeks, we are confronted with weekly wages scaled to an economy 15 years past.

To apply the two-thirds limit, therefore, does injustice to those whose earning power was cruelly halted at that time, stopping them cold while coworkers continued to gain in earning and purchasing power which enables them to live in the increasingly expensive and inflationary economy of today. Applying the two-thirds limit of a 15-year-old weekly wage does not even slightly accomplish for these unfortunate cast-asides what the purpose of the second injury fund presumed to do. Thus when effectuating that purpose, I feel we must read the legislature's intention in requiring the second injury fund to pay for permanent and total disability 'according to the full rate provided in the schedule of benefits' to be as defined by Member Storie. To do otherwise keeps those persons on a woefully outdated standard and does not give them what section 9, para (a) purports to give them, 'the amount now provided for his permanent and total disability' by awarding 'the full rate provided in the schedule of benefits.' I concur with Member Storie."

Member Trentacosta, dissenting from Member Storie's opinion and Chairman Iverson's concurrence, concluded his opinion by stating:

"Prior to the termination of the employer's liability in this case, plaintiff was receiving two payments, one payment from the employer and another payment from the second injury fund. However, at no time did the total weekly payment exceed two-thirds of plaintiff's average weekly earnings at time of injury. I am of the opinion that the legislature's intention in its amendments to section 9, para (a), part 2 of the act wanted to assure that when the term of the employer's obligation ran out that the second injury fund would assume the full obligation, that the claimant would continue to receive full benefits and not just a partial weekly payment from the second injury fund alone. To hold that the legislature intended that the second injury fund should

be obligated for the maximum rate, without application of the two-thirds of average weekly earning limitation, would apply a strained interpretation of section 9, para (a), part 2 of the act. In determining the intent and meaning of the words 'according to the full rate provided in the schedule of benefits' in section 9, para (a), part 2, humanitarian emotion ought not to take the place of logical interpretation.

"I would vote to affirm the referee."

Members Bowerman and Mumper concurred in the Trentacosta opinion.

Member Bassett, concurring in result with Member Trentacosta, stated:

"I concur in the result of Member Trentacosta's opinion and in the substance of his reasoning therein to which I would add the following to clarify my position.

"In my opinion the legislature only intended the amount of weekly compensation to exceed two-thirds of the average weekly wage at time of injury when two-thirds of such wage is less than the present minimums provided in the third sentence of section 9, para (a) to wit:

" 'Weekly payments shall in no event be less than $27 if there are no dependents; $30 if 1 dependent; $33 if 2 dependents; $36 if 3 dependents; $39 if 4 dependents; and $42 if 5 or more dependents; except as provided in subsection (f).'

"Two-thirds of plaintiff's average weekly wage at time of injury was $37.20 which is $10.20 a week in excess of the statutory minimum heretofore set forth for no dependents. It therefore should be the amount to be ordered paid by the second injury fund."

Member Storie added an addendum to his opinion, which reads in part:

"Since the above was recorded, my associates have entered dissents which need no comment here except to note that they have committed the same error as did the referee and jumped through the enabling language of the 1955 and subsequent amendments to the last sentence of the provision in question, which clearly refers only to the sums payable 'after the period for which such person is otherwise entitled to compensation under this act.' This sentence provides no method for determining the amount payable each week, but directs simply that the sums payable after the period for which any such person is otherwise entitled to compensation continue according to the 'full rate' previously determined according to the preceding sentence in the amendatory act. The preceding sentence provides that the employee be paid the sum 'presently provided in the workmen's compensation schedule of benefits.' Eva King had no dependents. On September 1, 1965 the schedule of benefits provided a payment of $58 per week to an employee with no dependents. Her full rate to be continued after she otherwise is entitled to compensation from her employer would, therefore, be $58 per week."

Plaintiff claims that the limitation of weekly benefits to two-thirds of the employee's average weekly wage at the time of his injury applies only to the employer and not to the second injury fund, and that:

"The hearing referee and the majority of the appeal board ignored the legislative intent to establish the second injury fund as a protection to the totally and permanently disabled employee against the rising wage scales and rising cost of living. The decisions below ignore the legislative intention to employ the second injury fund to spread the risk of such inflation in wage and price scales to all employers (and ultimately to all consumers) through contributions to the second injury fund. * * *

"The Michigan legislature fully intended that the very few people who meet the restrictive definitions of 'total and permanent disability' needed to be placed in a very special class and provided with special attention. It is recognized that these people will be disabled for the remainder of their lives and that the wage structure and the cost of living, with the years passing, is rising. It is recognized that these people will need special attention because they cannot earn a living and must hire others to perform household tasks such as cutting their grass, shoveling their snow, and other tasks which a person not so seriously crippled would be able to perform without hired help. To limit such a person to two-thirds of his wage for the rest of his life would mean that he would be getting an extremely small and inadequate amount when, 20 years later, the wage structure and cost of living has risen to an alarming degree and the purchasing power of the dollar has dropped by over one half."

Plaintiff calls attention to the following facts:

"In 1940 the consumer price index for Detroit, based on a 1957–1959 standard of 100, was 48.2. In 1945, it was 62.4. In 1966, it was 111.1. *1967 Statistical Abstract of the United States (U.S. Dept. of Commerce) Table 506.*

"In April, 1968, the consumer price index for Detroit was 118.0. *U.S. Department of Labor, Bureau of Labor Statistics, 'Monthly Labor Review,' June, 1968, Table D–2.*

"In 1945, the gross average weekly earnings for production workers in manufacturing was $44.39. *U.S. Dept. of Commerce, 'Historical Statistics of the United States 1789–1945—a Supplement to the Statistical Abstract of the United States', p 67.*

"In March, 1968, the gross average weekly earnings of production or nonsupervisory workers in manufacturing was $120.18. *U.S. Dept. of Labor,*

*Bureau of Labor Statistics, 'Monthly Labor Review,' June, 1968, Table C–2, p 120.*

"In January 1948, Eva King's average weekly wage as a machine operator for Ford Motor Company was $55.80.

"In March, 1968, the gross average weekly earnings of production workers in the motor vehicle equipment industry was $161.54. *U.S. Dept. of Labor, Bureau of Labor Statistics, 'Monthly Labor Review,' June, 1968, Table C–1, p 111.* \* \* \*

"In December, 1968, the average weekly earnings of production or nonsupervisory workers in the motor vehicle and equipment industry was $181.80. *U.S. Department of Labor, Bureau of Labor Statistics, 'Monthly Labor Review,' March, 1969, Table C–1, p 108.*"

The statement in the majority opinion that, "In determining the intent and meaning of the words 'according to the full rate provided in the schedule of benefits' in section 9, para (a), part 2, humanitarian emotion ought not to take the place of logical interpretation," is answered by plaintiff as follows:

"Plaintiff contends that the intent and spirit of the workmen's compensation laws is 'humanitarian,' that this is the spirit which motivates legislative and judicial solutions to serious social problems; that this was the intent and spirit behind these second injury fund amendments under consideration today; and that this spirit must be recognized and given effect in these times and ought not to be forgotten now."

The following from defendant's brief sets forth the essence of its answer to plaintiff's claim:

"Pursuant to these provisions [1955 and 1965 amendments to part 2, § 9, para (a)], the totally and permanently disabled worker received, during the period of the employer's liability, a payment

from the employer or its insurer at the weekly rate in effect at the time of the injury and received another payment from the second injury fund for the difference between the employer's weekly rate and the weekly rates established by subsequent amendments. At the termination of the period of the employer's liability, payments from the second injury fund were to be made to cover the amount previously paid by the employer in addition to the differential payments previously paid by the second injury fund."

Defendant and appellee, second injury fund, concludes its brief under the heading "Summary," as follows:

"The phrase: 'but no more than $....,' and the clause: 'shall in no event be less than $....,' which provide, respectively, the maximum and the minimum weekly rates in section 9, para (a), part 2 (CL 1948, § 412.9 [Stat Ann 1968 Rev § 17.159]), are, by the nature of such terminology, modifiers. In the formula for the computation of weekly benefit rates, they have reference to, and limit, the preceding factor—66-2/3% of the average weekly wage. No rule of statutory construction, or logic, permits that either of these, standing alone, be construed as an unrelated or independent formula."

In many decisions we have followed the rule of statutory construction as stated in 2 Sutherland, Statutory Construction (3d ed), § 4705, p 339:

"It is an elementary rule of construction that effect must be given, if possible, to every word, clause and sentence of a statute. A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error."

Applying that rule to defendant second injury fund's contention that "the only construction which can be given to the term 'full rate' is that, by the use of it, the legislature made certain that after the termination of the period during which the employer was liable for its portion of the payments, the second injury fund was to assume the full obligation," would make the word "full" redundant because the sentence immediately preceding the sentence that uses this word "full" provides that "the difference between what he is now or shall hereafter be entitled to receive from his employer [which in the instant case is nothing]  *  *  *  and the amount [per week] now provided for his permanent and total disability" shall be paid to claimant.

The decision in this appeal calls for an answer to the question: Does the 1927 enactment (PA 1927, No 63) which contains the two-thirds of average weekly wage limitation on employer's liability, take precedence over the 1955 amendment (PA 1955, No 250) providing for payment from the second injury fund of "the amount  *  *  *  now provided" and "according to the full rate"?

A similar question was presented to this Court in our very recent case of *Halas* v. *Yale Rubber Manufacturing Company* (1969), 381 Mich 542.  Plaintiff Halas on October 21, 1950, while employed as an unskilled employee in the field of common labor at a weekly wage of $95.09 suffered the amputation of both of his hands.  After payments had been made for total and permanent disability for 800 weeks from the date of injury, the hearing referee held on February 21, 1966, that Halas was totally and permanently disabled and, although he was employed at wages equal to or higher than his earnings at the time of the injury, decided that no set-off for wages should be allowed against the payments to be made

by the second injury fund as provided for in the legislative enactment of 1927 in section 11, part 2, as amended.[5]

In that case, as in the present case, the appeal board affirmed the referee's decision and we granted the application to bypass the Court of Appeals. In deciding *Halas*, we stated (p 545): "Our decision depends upon determination of legislative intent as expressed in part 2, § 9 of the act, and part 2, § 11 of the act."

In affirming the appeal board, we said (p 550):

"We agree with the board's conclusion that 'a new concept for compensating' came into being with the 1955 and 1956 amendments that took the place of the 1927 section 11's concept and that 'the language used by the legislature which permits these payments to continue after the period for which compensation would otherwise be payable is clear, concise, and does provide that such compensation be paid "according to the full rate provided in the schedule of benefits." ' "

We agree with plaintiff's claim that the limitation of weekly benefits to 66-2/3% of the employee's average weekly wage at the time of injury applies only to the employer and not to the second injury fund, and with Chairman Iverson's conclusion "that to retain the two-thirds limitation in such cases

---

[5] "The weekly loss in wages referred to in this act shall consist of such percentage of the average weekly earnings of the injured employee computed according to the provisions of this section as shall fairly represent the proportionate extent of the impairment of his earning capacity in the employment in which he was working at the time of the injury, the same to be fixed as of the time of the injury, but to be determined in view of the nature and extent of the injury. The compensation payable, when added to his wage earning capacity after the injury in the same or another employment shall not exceed his average weekly earnings at the time of such injury." (CL 1948, § 412.11, as amended by PA 1965, No 44 [Stat Ann 1968 Rev § 17.161].)

would defeat the theory underlying the creation of the second injury fund and its responsibilities."

We grant plaintiff the relief sought "that the decision of the hearing referee be modified to order the second injury fund to pay plaintiff compensation at the rate of $58 per week from September 1, 1965 to August 31, 1966; at $61 per week from September 1, 1966 to August 31, 1967, and at $64 per week from September 1, 1967 and continuing until further order of the workmen's compensation department."

Reversed and remanded for entry of order in accordance with this opinion. No costs, a public question being involved.

T. E. BRENNAN, C. J., and DETHMERS, BLACK, T. M. KAVANAGH, ADAMS, and T. G. KAVANAGH, JJ., concurred.

*APPENDIX.*

CL 1948, § 412.9, para (a), as amended by PA 1955, No 250 (Stat Ann 1955 Cum Supp § 17.159):

"Any person who is permanently and totally disabled and who is receiving payments of workmen's compensation which are payable to such person under this act in amounts per week of less than is presently provided in the workmen's compensation schedule of benefits for permanent and total disability and for a lesser number of weeks than the duration of such permanent and total disability shall hereafter receive weekly, without application, from the second injury fund, an amount equal to the difference between what he is now receiving per week and the amount per week now provided for permanent and total disability with appropriate application of the provisions of paragraphs (b), (c), (d) and (e) of this section since the date of injury. Payments from this second injury fund shall continue after the period for which any such person is otherwise entitled to compensation under this act for the duration of such permanent and total disability according to the full rate provided in the schedule of benefits."

CL 1948, § 412.9, para (a), as amended by PA 1965, No 44 (Stat Ann 1968 Rev § 17.159):

"Any permanently and totally disabled person as defined in this act who, on or after June 25, 1955, is entitled to receive payments

of workmen's compensation under this act in amounts per week of less than is presently provided in the workmen's compensation schedule of benefits for permanent and total disability and for a lesser number of weeks than the duration of such permanent and total disability shall after the effective date of any amendatory act, by which his disability is defined as permanent and total disability or by which the weekly benefit for permanent and total disability is increased, receive weekly, without application, from the second injury fund, an amount equal to the difference between what he is now or shall hereafter be entitled to receive from his employer under the provisions of this act as the same was in effect at the time of his injury and the amount now provided for his permanent and total disability by this or any other amendatory act with appropriate application of the provisions of paragraphs (b), (c), (d) and (e) of this section since the date of injury. Payments from this second injury fund shall continue after the period for which any such person is otherwise entitled to compensation under this act for the duration of such permanent and total disability according to the full rate provided in the schedule of benefits."