RANDALL v CHRYSLER CORPORATION

Docket No. 69168. Submitted February 21, 1984, at Detroit.—Decided
June 18, 1984.

Lester W. Randall was injured in July, 1964, during the course of
his employment with Chrysler Corporation and was determined
to be totally and permanently disabled. Chrysler Corporation
and the Second Injury Fund paid basic and differential benefits
respectively to Randall until November, 1979, when the 800-
week conclusive presumption of total and permanent disability
expired, at which time they terminated paying benefits. Ran-
dall sought review of the propriety of the termination of
benefits. A hearing officer with the Bureau of Workers' Disabil-
ity Compensation held that the termination was proper. Ran-
dall appealed to the Workers' Compensation Appeal Board.
During the pendency of that appeal, the Supreme Court held
that total and permanent disability benefits could not be auto-
matically terminated at the end of the 800-week period, but
rather such benefits could only be terminated upon petition and
proof by the employer that the claimant was no longer dis-
abled. Chrysler and the Fund recommenced paying benefits but
sought a determination by the appeal board on the question of
whether they were liable for interest on the disability pay-
ments which they had withheld. Randall sought a determina-
tion on the question of whether the provision of 1980 PA 357
which purports to limit the level of compensation for totally
and permanently disabled claimants injured prior to July 1,
1968, to the greater of the compensation rate they received on
December 1, 1981, or one-half of the last determined state
average weekly wage was properly considered in determining
the benefits due him. The appeal board held that interest was
payable with respect to the withheld benefits and that the

REFERENCES FOR POINTS IN HEADNOTES
[1] 81 Am Jur 2d, Workmen's Compensation §§ 2, 10 *et seq.*
[2] 73 Am Jur 2d, Statutes §§ 145, 146.
[2-4] 81 Am Jur 2d, Workmen's Compensation § 27 *et seq.*
[4] 73 Am Jur 2d, Statutes § 250.
[5] 82 Am Jur 2d, Workmen's Compensation § 338 *et seq.*

limitation contained in 1980 PA 357 was properly applied to Randall. Randall appealed by leave granted. *Held:*

1. While the Second Injury Fund at the time of Randall's injury and until July 1, 1968, was obligated to pay differential benefits in such an amount so as to provide to those totally and permanently disabled claimants total benefits equal to the maximum allowable compensation rate, the Legislature has the prerogative to limit increases in the rate of differential benefits.

2. The 1980 statutory amendment which imposed the new limits on the maximum benefits payable to members of the class of claimants of which Randall was a member was part of a general reform of the workers' disability compensation scheme aimed at reducing the overall cost of the system and designed to bring the cost in Michigan in line with surrounding states. The limitation in question evidences a clear intent by the Legislature that, as to the class of claimants of which Randall was a member, the differential rate paid by the Second Injury Fund shall be limited by limiting the maximum benefits to members of that class to the greater of the rate paid to a claimant of Randall's class on the last day of 1981 or one-half of the last determined state weekly average wage.

Affirmed.

1. WORKERS' COMPENSATION — RIGHT TO BENEFITS — LEGISLATIVE PREROGATIVE.

Rights to benefits under the Worker's Disability Compensation Act are purely statutory; thus, the Legislature has the prerogative to redefine the extent of those benefits.

2. STATUTES — JUDICIAL CONSTRUCTION.

The purpose of statutory construction is to discover and effectuate the intent of the Legislature.

3. WORKERS' COMPENSATION — JUDICIAL CONSTRUCTION.

The intent of the Legislature in enacting 1980 PA 357, which amended portions of the Worker's Disability Compensation Act, was to reform Michigan's workers' disability compensation system so as to bring the costs of the system more in line with surrounding states.

4. STATUTES — JUDICIAL CONSTRUCTION.

A key precept of statutory construction is that every phrase, clause and word in a statute must be given effect, if possible.

5. WORKERS' COMPENSATION — JUDICIAL CONSTRUCTION.

The Legislature has expressed its clear intent that a totally and

permanently disabled employee who was injured prior to July 1, 1968, will be entitled to compensation at the rate payable to that employee as of December 31, 1981, or to compensation equal to one-half of the last determined state weekly average wage, whichever is greater; accordingly, differential benefit payments made by the Second Injury Fund to a totally and permanently disabled claimant injured prior to July 1, 1968, are properly limited to the difference between the employer's obligation to pay two-thirds of an employee's average weekly wage at the time of his injury and the compensation rate payable to the employee as of December 31, 1981, or compensation equal to one-half of the last determined state average weekly wage, whichever is greater (MCL 418.351[2]; MSA 17.237[351][2]).

*Marston, Sachs, Nunn, Kates, Kadushin & O'Hare, P.C.* (by *Granner S. Ries),* for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Eileen D. Zielsch* and *Morrison Zack,* Assistants Attorney General, for the Second Injury Fund.

Before: D. E. HOLBROOK, JR., P.J., and MAC-KENZIE and E. A. QUINNELL,* JJ.

E. A. QUINNELL, J. Plaintiff appeals on leave granted by this Court from a decision of the Workers' Compensation Appeal Board (WCAB), which held that MCL 418.351(2); MSA 17.237(351)(2), as amended by 1980 PA 357, was applicable in the calculation of the amount of workers' compensation benefits to which he was entitled.

This appeal has its genesis in a severe back injury which plaintiff suffered in July, 1964, during the course of his employment with defendant Chrysler Corporation. Plaintiff was ultimately found to be permanently and totally disabled, and

---

* Circuit judge, sitting on the Court of Appeals by assignment.

the ongoing nature of his disability is not in issue for purposes of this appeal.

Defendant Chrysler Corporation paid basic benefits and defendant Second Injury Fund paid differential benefits to plaintiff through November 7, 1979, when the statutory 800-week conclusive presumption of total and permanent disability expired. At that time, defendants terminated paying benefits in reliance on *Clark v Gerity Michigan Corp,* 84 Mich App 151; 269 NW2d 510 (1978), *lv den* 403 Mich 856 (1978). Plaintiff sought a hearing to review the propriety of the termination. The termination of benefits was upheld by a workers' compensation referee. While plaintiff's appeal to the WCAB was pending, *Ferns v Russ Graham Shell Service,* 413 Mich 550; 321 NW2d 380 (1982), was decided by the Michigan Supreme Court. In *Ferns,* the Court held that disability benefits continue to be payable after the 800-week period of conclusively presumed total and permanent disability unless and until the employer petitions for a determination that the employee is no longer permanently and totally disabled. The burden of showing the absence of disability is on the employer.

After *Ferns,* defendants recommenced paying workers' disability compensation benefits, although they both filed petitions to stop benefits, asserting that plaintiff is no longer disabled. The *Ferns* decision did not result in the discontinuance of the appeal to the WCAB. Defendants argued that they should not have to pay interest on the disability benefits they had withheld before *Ferns* was decided. This issue was resolved against defendants by the WCAB and is not an issue on appeal. See, *Selk v Detroit Plastic Products,* 419 Mich 1; 345

NW2d 184 (1984). Plaintiff argued that MCL 418.351(2); MSA 17.237(351)(2), as rewritten by 1980 PA 357, effective January 1, 1982, should not have been applied in the calculation of the benefits due him. The WCAB disagreed, and this Court granted leave to appeal to address this issue.

MCL 418.351(2); MSA 17.237(351)(2) now provides:

"A totally and permanently disabled employee whose date of injury preceded July 1, 1968, is entitled to the compensation under this act that was payable to the employee immediately before the effective date of this subsection, or compensation equal to 50% of the state average weekly wage as last determined under section 355, whichever is greater."

Contemporaneously with the amendment of MCL 418.351(2); MSA 17.237(351)(2), 1980 PA 357 established a new maximum compensation rate by amendment to MCL 418.355; MSA 17.237(355). Effective January 1, 1982, the new maximum compensation rate became 90% of the state average weekly wage as of the prior June 30, adjusted annually. Prior to January 1, 1982, the maximum benefit compensation rate was 66-2/3% of the state average weekly wage. According to the WCAB's opinion, and not contradicted by either party, the amendment of MCL 418.355; MSA 17.237(355) resulted in the maximum weekly benefit being increased from $210 in 1981 to $307 in 1982. Plaintiff argued before the WCAB, and now on appeal, that he is entitled to the new increased benefit rate. The WCAB disagreed. Applying MCL 418.351(2); MSA 17.237(351)(2), it concluded that plaintiff was entitled to $210, the amount he re-

ceived for the last week of 1981.[1] If MCL 418.351(2); MSA 17.237(351)(2) is applicable to plaintiff, he will continue to receive benefits of $210 a week and will not receive an increase in his compensation benefits unless and until the state average weekly wage exceeds $420.

Plaintiff relies on *King v Second Injury Fund,* 382 Mich 480; 170 NW2d 1 (1969), for the proposition that he is entitled to compensation at the rate of $307 per week. In *King,* the Supreme Court held that statutory language which limited weekly compensation benefits to 66-2/3% of the employee's weekly wage at the time of the injury only applied to the payment of benefits from the employer or the employer's insurer. However, the Court concluded that the Second Injury Fund was obligated to pay differential benefits in the full amount between the employer's payment and the maximum rate payable for the employee's dependency classification.[2] The effect of the *King* decision was to allow totally and permanently disabled persons to receive the benefit of subsequent legislative increases in the maximum allowable compensation rate by requiring the increased rate to be applied in determining differential benefits.[3]

It is apparently plaintiff's position that *King*

[1] Of this $210, $36 was paid by defendant Chrysler Corporation as representing 66-2/3% of plaintiff's average weekly wage at the time of his injury. The remaining $174 was paid by the Second Injury Fund as a differential payment.

[2] In reaching this conclusion, the Court relied on language appearing in MCL 412.9(a); MSA 17.159(a), since repealed, requiring the Second Injury Fund to make differential payments "for the duration of the permanent and total disability according to the *full rate* provided in the schedule of benefits". (Emphasis added.)

[3] As of July 1, 1968, no more *King* plaintiffs were to appear on the scene because of the enactment of 1968 PA 227, effective July 1, 1968, which eliminated the automatic escalator effect. As amended by Act 227, the statutory sections governing differential payments by the Second Injury Fund, MCL 417.53; MSA 17.230(103) and MCL 412.9; MSA 17.159, no longer contained the language, noted in fn 2, *supra,* requiring the Second Injury Fund to pay differential benefits accord-

precludes limiting or abridging increases in benefits for totally and permanently disabled employees. We disagree. In our view, *King* represents nothing more than a construction of the then existing provision of the workers' compensation statute. The *King* decision does not suggest that increases in the rate of differential benefits may not be limited by the Legislature. Rights to benefits under the workers' compensation scheme are purely statutory, and the Legislature has the prerogative to redefine the extent of those benefits. *Kunde v Teesdale Lumber Co,* 52 Mich App 360, 371; 217 NW2d 429 (1974), *lv den* 391 Mich 841 (1974); *McKenna v Chevrolet-Saginaw Grey Iron Foundry,* 63 Mich App 365, 373-374; 234 NW2d 526 (1975), *lv den* 395 Mich 827 (1976).

The purpose of statutory construction is to discover and effectuate the intent of the Legislature. *Melia v Employment Security Comm,* 346 Mich 544, 562; 78 NW2d 273 (1956). The language of MCL 418.351(2); MSA 17.237(351)(2), purporting to limit increases in the weekly maximum compensation benefit rate, was enacted as part of 1980 PA 357. This bill was intended to reform Michigan's workers' disability compensation scheme by, in part, reducing the overall costs of the system to bring workers' compensation costs more in line with surrounding states. See, the Senate Analysis of Senate Bill 1044 as enrolled (1980 PA 357), dated January 7, 1981.[4] The Senate Analysis of Senate Bill 1044 indicates:

---

ing to the "full rate". Thus, for persons who became totally and permanently disabled after July 1, 1968, the Fund's obligation to pay differential benefits was limited to two-thirds of those persons' actual weekly wage.

[4] Indeed, as the following excerpt from the Senate Analysis of the bill shows, the major opposition to its enactment centered on its perceived pro-business bias:

"SUPPORTING ARGUMENT:

"The new law addresses most of the workers' compensation prob-

"A totally and permanently disabled employee who was disabled before July 1, 1968 will be entitled to compensation at the rate which would have been payable to the employee as of December 31, 1981 or to compensation equal to one-half the state average weekly wage as last determined by the Michigan Employment Security Commission as of January 1, 1982, whichever level of compensation is greater."

Moreover, were we to hold that MCL 418.351(2); MSA 17.237(351)(2) does not operate as a limit on plaintiff's compensation benefits, we would be violating a key precept of statutory construction, namely, that every phrase, clause, and word in a statute must be given effect, if possible. *Melia, supra.* To construe MCL 418.351(2); MSA 17.237(351)(2) in the manner suggested by plaintiff would literally render it wholly ineffective. Because, under *King,* an employer would never be required to pay a totally and permanently disabled employee compensation benefits in excess of 66-2/3% of that employee's average weekly wage at the time of his injury, MCL 418.351(2); MSA

lems cited by businesses over the past ten years. It also addresses labor's concerns over inadequate compensation levels. While Public Act 357 is not the whole solution to the problems of workers' compensation in Michigan it is a reasonable compromise and a balanced and significant first step toward equitable, effective reform.

"Response: It is misleading to talk of 'balanced' reform when so little actuarial information is available on the measure. Many of the reforms included here will require judicial or administrative interpretation, and it remains to be seen whether this new law will have any positive impact on the costs or effectiveness of Michigan's workers' compensation system.

"OPPOSING ARGUMENT:

"This measure is heavily pro-business; its only significant concession to labor is an increase in the maximum weekly benefit levels. Failure to include a future cost-of-living adjustment in benefit levels will mean that long-term disabled employees will continue to be locked into fixed incomes and will continue to be forced to seek other means of support—most often General Assistance at taxpayers' expense.

17.237(351)(2) cannot be intended to impose a limitation on the maximum primary benefit payment which an employer must make to a totally and permanently disabled worker. Instead, it must apply to the Second Injury Fund's prior statutory obligation to pay differential benefits to totally and permanently disabled claimants injured prior to July 1, 1968, in the full amount of the difference between the employer's payment and the maximum benefit payable under the statute. As the employer's rate of payment of benefits is fixed at the time of the injury, MCL 418.351(2); MSA 17.237(351)(2), to be given effect, must be viewed as providing a new method for calculating increases in the differential benefits which the Second Injury Fund is obligated to pay to *King* plaintiffs. This was the conclusion of the WCAB, and we agree with this conclusion.

Affirmed. No costs, an important issue of statutory construction being crucial to the resolution of this appeal.