JENKINS v GREAT LAKES STEEL CORPORATION

Docket No. 146167. Submitted November 9, 1992, at Lansing. Decided February 3, 1993; approved for publication June 17, 1993, at 9:20 A.M. Leave to appeal denied, 442 Mich 930.

Rayfield Jenkins received workers' compensation benefits from Great Lakes Steel Corporation and differential benefits from the Second Injury Fund after losing both hands in a 1975 work-related accident. Effective January 1, 1982, 1980 PA 357 amended MCL 418.351; MSA 17.237(351) to set weekly compensation rates at eighty percent of the employee's after-tax average weekly wage. Before then, § 351 had set those rates at two-thirds of the employee's average weekly wage. In an April 16, 1982, petition filed with the Bureau of Workers' Disability Compensation, Jenkins claimed that differential benefits were being paid by the Second Injury Fund on the basis of an incorrect calculation of his weekly compensation rate. A hearing referee ruled that differential benefits should be based on eighty percent of Jenkins' after-tax average weekly wage. The Workers' Compensation Appeal Board subsequently decided that differential benefits should be based on two-thirds of Jenkins' average weekly wage. The Second Injury Fund appealed by leave granted.

The Court of Appeals *held:*

Section 351(3), which was added by 1980 PA 357, provides that if an employee who is eligible for weekly benefits would have received greater weekly benefits under the prior benefit standard of two-thirds of the average weekly wage, then the employee is entitled to such greater weekly benefits. The legislative intent behind § 351(3) is that, for a person who received benefits for total and permanent disability before 1980 PA 357 and will continue to receive such benefits after enactment of 1980 PA 357, the weekly compensation rate is to be computed either as two-thirds of the average weekly wage or eighty percent of the after-tax average weekly wage, whichever method yields the greater amount of benefits.

In this case, Jenkins' weekly compensation rate would be

REFERENCES
Am Jur 2d, Workers' Compensation §§ 26 *et seq.*
See ALR Index under Workers' Compensation.

greater when calculated as eighty percent of the after-tax average weekly wage. Accordingly, his differential benefits must be computed on that basis.

Reversed.

WORKERS' COMPENSATION — TOTAL AND PERMANENT DISABILITIES — DIFFERENTIAL BENEFITS.

Differential benefits for a total and permanent disability incurred before January 1, 1982, are to be calculated thereafter on the basis of a weekly compensation benefit computed as two-thirds of the employee's average weekly wage or eighty percent of the employee's after-tax average weekly wage, whichever method yields the greater amount of benefits (MCL 418.351, 418.521(2); MSA 17.237[351], 17.237[521][2]).

*Kelman, Loria, Downing, Schneider & Simpson* (by *Donald W. Loria*), for Rayfield Jenkins.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Morrison Zack,* Assistant Attorney General, for the Second Injury Fund.

Before: GRIBBS, P.J., and MICHAEL J. KELLY and REILLY, JJ.

PER CURIAM. This case presents an issue of law regarding the proper construction of MCL 418.351; MSA 17.237(351), as amended, effective January 1, 1982, which is part of the Workers' Disability Compensation Act, being MCL 418.101 *et seq.*; MSA 17.237(101) *et seq.* Only subsections 1 and 3 are involved. They read:

> (1) *While the incapacity for work resulting from a personal injury is total, the employer shall pay, or cause to be paid as provided in this section, to the injured employee, a weekly compensation of 80% of the employee's after-tax average weekly wage, but not more than the maximum weekly rate of compensation, as determined under section 355.* Compensation shall be paid for the duration

of the disability. The conclusive presumption of total and permanent disability shall not extend beyond 800 weeks from the date of injury and thereafter the question of permanent and total disability shall be determined in accordance with the fact, as the fact may be at that time.

(3) *If an employee who is eligible for weekly benefits under this act would have received greater weekly benefits under the prior benefit standard of ⅔ of average weekly wages, subject to the maximum benefits which were in effect before January 1, 1982, then the employee shall be entitled to such greater weekly benefits, but not at a rate exceeding the maximum rate in his or her dependency classification under such law.* This subsection does not authorize payment to an employee according to any schedule of minimum benefits, except those provided in section 356. [Emphasis added.]

This Court granted the Second Injury Fund's application for leave to appeal from the October 4, 1991, order of the Workers' Compensation Appeal Board that significantly modified the decision of the hearing referee who had found that, on the basis of reference in MCL 418.521(2); MSA 17.237(521)(2) to § 351, plaintiff's "weekly benefit rate shall be determined pursuant to the current provisions of MCL 418.351(1), i.e., 80% of the after-tax benefit."

Relying on the same § 521(2), the appeal board held that plaintiff was entitled to a total weekly compensation rate "equal to two-thirds of his average weekly wages." The board specifically rejected basing plaintiff's total weekly compensation rate on eighty percent of his after-tax weekly wage, as provided in the amended § 351(1). The appeal board's order directed the Second Injury Fund "to pay differential benefits based upon two-thirds of said average weekly wage *but not to exceed the*

*maximum weekly compensation rate for each year subsequent to 1981."* (Emphasis added.)

It is undisputed that plaintiff sustained an injury on July 9, 1975, arising out of and in the course of his employment, which resulted in the amputation of his hands. Compensation for total and permanent disability was paid voluntarily by the employer and by the Second Injury Fund thereafter.

On May 9, 1984, the employer redeemed its liability with plaintiff, but that redemption did not affect the obligation of the Second Injury Fund to continue to pay the differential benefits due plaintiff under the Workers' Disability Compensation Act. There was no dispute regarding the proper rate of differential compensation payments made by the fund until January 1, 1982, the effective date of 1980 PA 357, which amended § 351.

On April 16, 1982, plaintiff filed a petition with the Bureau of Workers' Disability Compensation claiming that he was being paid differential benefits by the Second Injury Fund at an improper rate. Because there was no dispute regarding the facts, the matter was submitted to the hearing referee, and subsequently to the appeal board, upon briefs. Before its amendment, effective January 1, 1982, § 351(1) read:

> *While the incapacity for work resulting from the injury is total, the employer shall pay, or cause to be paid as hereinafter provided, to the injured employee, a weekly compensation of ⅔ of his average weekly wages, but not more than $64.00, if such injured employee has no dependents;* $69.00 if one dependent; $75.00 if two dependents; $81.00 if three dependents; $87.00 if four dependents; and $93.00 if five or more dependents; except as provided in section 355. Compensation shall be paid for the duration of the disability.

Weekly payments shall not be less than $27.00 if there are no dependents; $30.00 if one dependent; $33.00 if two dependents; $36.00 if three dependents; $39.00 if four dependents; and $42.00 if five or more dependents; except as provided in section 355. Compensation shall be paid for the duration of the disability. The conclusive presumption of total and permanent disability shall not extend beyond 800 weeks from the date of injury and thereafter the question of permanent and total disability shall be determined in accordance with the fact, as the fact may be at that time. [Emphasis added.]

Section 355, MCL 418.355; MSA 17.237(355), referred to in § 351(1), provided before its amendment, also effective January 1, 1982, that the maximum weekly rate in each dependency classification should be adjusted once each year in accordance with the "increase or decrease in the average weekly wage in covered employment, as determined by the employment security commission." After its amendment, effective January 1, 1982, § 355 still provided that the maximum weekly rate should be adjusted once each year in accordance with the "increase or decrease in the average weekly wage in covered employment" as determined by the Michigan Employment Security Commission.

Essentially, the question is what effect did the addition of subsection 3 to § 351 have on the calculation of the benefits due plaintiff from the Second Injury Fund. Plaintiff's average weekly wage was found by the appeal board to be $540.93. According to the bureau's disability compensation tables, the maximum weekly compensation rate to which plaintiff was entitled in 1975, was $107, because he had no dependents. That sum was the employer's weekly payment or obligation to plaintiff based on § 351(1).

The differential benefits payable by the Second Injury Fund are calculated according to § 521(2), which reads the same today as it did when plaintiff was injured in 1975. It states:

> *Any permanently and totally disabled person* as defined in this act, if such total and permanent disability arose out of and in the course of his employment, *who, on and after June 25, 1955, is entitled to receive payments* of workmen's compensation in amounts per week *of less than is presently provided* in the workmen's compensation schedule of benefits for permanent and total disability, and for a lesser number of weeks than the duration of such permanent and total disability, *after the effective date of any amendatory act by which his disability is defined as permanent and total disability, or by which the weekly benefits for permanent and total disability are increased, shall receive* weekly from the carrier on behalf of the second injury fund *differential benefits equal to the difference between what he is now or shall hereafter be entitled to receive from his employer* under the provisions of this act as the same was in effect at the time of his injury, *and the amounts now provided for his permanent and total disability by this or any other amendatory act, with appropriate application of the provisions of sections 351 to 359.* Such payments shall continue after the period for which the person is otherwise entitled to compensation under this act for the duration of the permanent and total disability. Any payments so made by a carrier pursuant to this section shall be reimbursed to the carrier by the second injury fund as provided in this chapter. [Emphasis added.]

On the basis of § 521(2), the method for calculating the differential benefits owed by the Second Injury Fund is to subtract the basic benefit paid by the employer from the current amount provided by statute for permanent and total disability. The

difference in those two figures is the amount owed by the Second Injury Fund. See *Kidd v General Motors Corp,* 414 Mich 578; 327 NW2d 265 (1982). The fund has no liability unless there is an increase in benefits in accordance with subsequent statutory amendments.

Under the fund's method of calculation, eighty percent of plaintiff's after-tax average weekly wage was $310.04. The employer's weekly payment based on plaintiff's date of injury was $107. Therefore, under § 521(2), the $107 is subtracted from $310.04, leaving $203.04 as the amount of weekly differential payments owed to plaintiff by the Second Injury Fund.

In contrast, under plaintiff's method of calculation, two-thirds of plaintiff's average weekly wage of $540.93 is $360.62. From that amount is then subtracted the same $107 that was defendant employer's obligation to plaintiff, leaving $253.62 as the weekly differential payments owed by the fund to plaintiff.

The difference between the above calculations based on the two different methods is $50.58 weekly. While the Second Injury Fund concedes that the effect of that amount on the trust fund is relatively minor if applied only to this plaintiff, it is argued that the effect will be quite significant if the appeal board's ruling is applied to the hundreds of similarly situated total and permanent disability claimants. It is alleged that the annual financial obligation of the trust fund could increase by hundreds of thousands of dollars.

The arithmetic of these two methods of calculation is not in dispute, but both appellant and appellee have acknowledged that the actual payment to plaintiff under either method will be reduced on the basis of MCL 418.357; MSA 17.237(357), the age 65 reduction provision.

However, the Second Injury Fund correctly points out that the appeal board has failed to apply the limiting language of § 351(3), which provides that if an employee who is eligible for weekly benefits would have received greater weekly benefits under the prior benefit standard of two-thirds of average weekly wages, subject to the maximum benefits that were in effect before January 1, 1982, then the employee shall be entitled to such greater weekly benefits, "but not at a rate exceeding the maximum rate in his or her dependency classification under such law." According to the bureau's disability compensation tables, the maximum weekly rate in plaintiff's dependency classification, "no dependents," was $181 in 1981. The appeal board not only ignored that limitation, but specifically ordered that the maximum weekly compensation rate for each year "subsequent to 1981" should apply. The board clearly erred in its interpretation of § 351(3). Every phrase, clause, and word in a statute must be given effect, if possible. *Randall v Chrysler Corp,* 135 Mich App 415; 354 NW2d 363 (1984).

Plaintiff and the appeal board have also erred in their application of § 521(2). They maintain that under that subsection the Second Injury Fund pays differential benefits when the weekly benefits for permanent and total disability are "increased," but that any decreases are not applicable to persons receiving compensation benefits for permanent and total disability. Their point is that this plaintiff's weekly benefits calculated according to the two-thirds method results in $360.62, whereas the weekly benefits calculated according to the eighty percent method results in $310.04, clearly a decrease in the amount of weekly benefits.

However, under both the Second Injury Fund's

method of calculation and plaintiff's method of calculation, plaintiff in fact does receive an *increase* in weekly compensation benefits. The express limitation to the maximum rate in plaintiff's dependency classification, which according to the bureau's disability compensation tables was $181 on December 31, 1981, means that if the fund pays differential payments of $203.04, on the basis of its calculation, that is a $22.04 increase a week for plaintiff. It is true that plaintiff would get a greater increase in weekly differential payments under his calculation, which results in weekly differential payments by the fund of $253.62. Arithmetically, that would come out to an increase of $72.62 a week for plaintiff. The difference in differential payments to plaintiff between his method of calculation and the fund's method of calculation would be $50.58, but as has just been demonstrated, plaintiff will have an increase in his weekly differential payments from the Second Injury Fund under either method.

All that remains is to reemphasize the plain meaning of the language in § 351(3), to the effect that if an employee who is eligible for weekly benefits "would have received greater weekly benefits under the prior benefit standard of two-thirds of average weekly wages, subject to the maximum benefits which were in effect before January 1, 1982," then the employee shall be entitled "to such greater weekly benefits, but not at a rate exceeding the maximum rate in his or her dependency classification under such law." The purpose of statutory construction is to discover and give effect to the intent of the Legislature. *Randall v Chrysler Corp, supra,* and *Melia v Employment Security Comm,* 346 Mich 544; 78 NW2d 273 (1956). This Court holds that § 351(3) expresses the legislative intent that persons receiving compensa-

tion payments for permanent and total disability should not have their benefits decreased by the new amendments, effective January 1, 1982. Therefore, it was specifically provided that if those benefits under the law in existence before January 1, 1982, subject to the maximum benefits then in effect, were greater, such employee was entitled to continue receiving those greater weekly benefits and did not have to have the weekly compensation benefits determined under § 351(1), as amended, providing for eighty percent of the employee's after-tax average weekly wage. However, if the plaintiff's compensation benefits would be greater under § 351(1), as amended, then the totally and permanently disabled employee was entitled to take advantage of the new method of calculation. In other words, this was a "cannot lose" amendment for the injured employee already drawing compensation for total and permanent disability under the two-thirds provision.

That portion of the appeal board's order that directed the Second Injury Fund to pay differential benefits on the basis of two-thirds of the average weekly wage but not to exceed the maximum weekly compensation rate for each year subsequent to 1981 is reversed, and the Second Injury Fund is hereby ordered to pay differential benefits to plaintiff in accordance with the eighty percent provision of § 351(1), as amended effective January 1, 1982, subject to the maximum determined under § 355.

Reversed.